# In the United States Court of Federal Claims

### No. 16-1624L; No. 17-1931L
### Filed: June 29, 2018

```
* * * * * * * * * * * * * * *    *
REINALDO CASTILLO, et al.,        *
                                  *
                 Plaintiffs,      *
         v.                       *
                                  *
UNITED STATES,                    *
                                  *
                 Defendant.       *
                                  *
* * * * * * * * * * * * * * *    *

* * * * * * * * * * * * * * *    *
NELSON MENENDEZ, et al.,          *
                                  *
                 Plaintiffs,      *
         v.                       *
                                  *
UNITED STATES,                    *
                                  *
                 Defendant.       *
                                  *
* * * * * * * * * * * * * * *    *
```

**Motion for Partial Summary Judgment; Takings Claim; Trails Act, 16 U.S.C. § 1241 et seq.; Florida Law; Center Line Presumption.**

**Lindsay S.C. Brinton**, Arent Fox, LLP, Clayton, MO, for plaintiffs. Of counsel was **Mark F. Hearne, II**, Arent Fox, LLP, Washington, D.C.

**Davené D. Walker**, Trial Attorney, Environment & Natural Resources Section, Department of Justice, Washington, D.C., for defendant. With her was **Jeffrey H. Wood**, Acting Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington, D.C. Of counsel was **Theodore Hunt**, Associate General Counsel, Surface Transportation Board, Washington, D.C.

**O P I N I O N**

<u>**Horn, J.**</u>

The nineteen plaintiffs in <u>Reinaldo Castillo, et al., v. United States</u>, Case No. 16-1624 (<u>Castillo</u>),[1] and the three plaintiffs in <u>Nelson Menendez, et al., v. United States</u>, Case No. 17-1931 (<u>Menendez</u>),[2] the two above-captioned and consolidated cases before this court, are landowners along the same railroad line in Florida. Each own a parcel of land in a subdivision that is "[a]djacent" to the South Little River Branch Railroad Line (railroad corridor), as stipulated to in both cases by the parties in two separate tables submitted to the court with entries for each of the <u>Castillo</u> and <u>Menendez</u> plaintiffs regarding: "Claim Number;" "Plaintiffs;" "Parcel Number;" "Owned Parcel on NITU Date;" "Adjacent to ROW;" "Applicable RR Conveyance;" and "Nature of RR Ownership." The two separate tables were included in the parties' Joint Stipulations Regarding Title submitted to the court in <u>Castillo</u> on August 22, 2017, and in <u>Menendez</u> on February 23, 2018, and appear later in the opinion. Both sets of plaintiffs also allege that as "[a]djacent" landowners to the railroad corridor, they own the land that runs to the center line of the railroad corridor. They also each allege that when the United States government, the defendant, authorized the South Little River Branch Railroad Line to be used for a public recreational trail, pursuant to the National Trails System Act, 16 U.S.C. § 1241 et seq. (2012) (the Trails Act), the government destroyed their reversionary rights to exclusive use and possession of the land underlying the railroad corridor, effectively taking their property without just compensation. According to the <u>Castillo</u> and <u>Menendez</u> plaintiffs, they are, therefore, entitled to receive just compensation under the Fifth Amendment to the United States Constitution for the government's taking of their private property.

---

[1] The plaintiffs in <u>Castillo</u> are as follows: Gonzalo Padron Marino, Mayda Rotella and Julia Garcia, parcel number 01-4002-002-0220; Shops on Flager Inc., parcel number 01-4002-002-1780; Jose F. and Dora A. Dumenigo, parcel number 01-4002-002-1730; Humberto J. and Josefa Marcia Diaz, parcel number 01-4002-002-1720; Luis Crespo, parcel number 01-4002-002-1650; Jose Luis and Grace Barsello Napole, parcel number 01-4002-002-1640; Bernardo D. and Norma A. Manduley, parcel number 01-4002-002-1630; Danilo A. and Dora Rodriguez, parcel number 01-4002-002-1610; Avimael and Odalys Arevalo, parcel number 01-4002-002-1600; Dalia Espinosa, Daniel Espinosa and Sofira Gonzalez, parcel number 01-4002-002-1580; Lourdez Rodriguez, parcel number 01-4002-001-1370; Alberto Perez, parcel number 01-4002-001-1380; Mayra Lopez, parcel number 01-4002-001-1390; Niraldo Hernandez Padron and Mercedes Alina Falero, parcel number 01-4002-001-1400; Luisa Palencia and Xiomara Rodriguez, parcel number 01-4002-001-1410; Reinaldo F. Castillo, parcel number 01-4002-001-1430; Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, parcel number 01-4002-001-1440; South American Tile, LLC, parcel number 01-4002-001-1450; and Gladys Hernandez, parcel number 01-4002-001-1460.

[2] The plaintiffs in <u>Menendez</u> are as follows: Jose Martin Martinez and Norma del Socorro Gomez, parcel number 01-4002-002-1710; Nelson Menendez and Osvaldo Borras, Jr., parcel number 01-4002-002-1690; and Luis R. Schmidt, parcel number 01-4002-002-1660.

**FACTS**

The Florida East Coast Railway operates the section of the railroad corridor at issue, which spans 100 feet in width and runs approximately 1.21 miles on the South Little River Branch Railroad Line between milepost LR 11+3989 and milepost LR 13+0000 in Miami-Dade County, Florida. The land upon which the railroad corridor at issue was built was obtained by the Florida East Coast Railway through multiple conveyances in the 1920s. In particular, the section of the railroad corridor at issue is comprised of four unequally sized and separate rights-of-way and a strip of land resulting from a written deed, that when combined, span 100 feet wide and comprise part of the 1.21 mile long railroad corridor. In 1932, the Florida East Coast Railway constructed a railroad line on this 1.21 mile strip of land.

According to the map depicting an aerial view of the railroad corridor attached to plaintiffs' cross-motions for partial summary judgment in <u>Castillo</u> and <u>Menendez</u>, to which defendant does not take issue, the section of the railroad corridor at issue is actually comprised of four separate rights-of-way obtained by condemnation and one property interest obtained by the Holman deed, which are not all adjacent to the parcels belonging to the plaintiffs in <u>Castillo</u> and <u>Menendez</u>. According to the aerial map submitted by the plaintiffs, three of the four rights-of-way, the Russo, Johnson, and J. Pyles and J. Owens rights-of-way, discussed below, when combined, form the eastern edge of the railroad corridor that runs adjacent to the twenty-two parcels belonging to the <u>Castillo</u> and <u>Menendez</u> plaintiffs. The Stanley right-of-way, and the Holman property interest obtained by a deed, when combined, form the western side of the railroad corridor, and, therefore are separated from the <u>Castillo</u> and <u>Menendez</u> plaintiffs' parcels by one of the other three rights-of-way at issue, as depicted on plaintiffs' aerial map attached to their cross-motions for partial summary judgment in <u>Castillo</u> and <u>Menendez</u>.

**The Holman Conveyance**

The Florida East Coast Railway obtained its first relevant property interest by conveyance on July 20, 1923 by deed from G.F. and Mary J. Holman. The Holman deed, titled "Warranty Deed," states that on July 20, 1923,

> GF Holman and Mary J Holman, his wife . . . parties of the first part, and FLORIDA EAST COAST RAILWAY COMPANY, . . . party of the second part, WITNESSETH, that the said parties of the first part, for and in consideration of the sum of ($3,000.00) *******THREE THOUSAND********* Dollars, . . . . granted, bargained, and sold to the said party of the second part, its successors and assigns forever, the following described land, to wit: A piece or parcel of land situated in the South-west Quarter (SW ¼) of the South-east Quarter (SE ¼) of Section Two (2) of Township Fifty-four (54) South, in Range Forty (40) East, in Dade County, Florida, bounded and described as follows:
>
> . . .

3

> 1320 feet more or less, to lands now or formerly of W. W. Goucher, thence Westerly along Goucher's lands 76 feet, thence South 1320 feet more or less to the South line of said Section Two (2) at a point 100 feet West of the point of beginning, thence Easterly 100 feet to the point or place of beginning. Containing 2.72 acres more or less.

(capitalization in original). As depicted by plaintiffs' aerial map attached to their cross-motion in Castillo, to which, as noted above, defendant does not take issue, the section of the railroad corridor obtained through the Holman deed runs north to south and runs parallel to the parcels of land for the following nine Castillo plaintiffs: (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez. The land obtained for the railroad, which resulted from the Holman conveyance, however, as depicted on the Castillo plaintiffs' aerial map, is not adjacent to these nine parcels of land. Instead, according to plaintiffs' aerial map of the railroad corridor, wedged in between the railroad's land, which resulted from the Holman deed, and the parcels of land belonging to the nine Castillo plaintiffs is the Russo right-of-way. As previously noted, plaintiffs' aerial map depicts the location of each of the four rights-of-way obtained by condemnation and the railroad's land conveyed by the Holman conveyance, as well as the location of each of the plaintiffs' distinct parcels of land.

**The Four Separate and Distinct Rights-of-Way by Condemnation**

The Florida East Coast Railway obtained its first right-of-way in a condemnation proceeding in the United States Circuit Court for Dade County, Florida (Dade County Circuit Court) against "Paul Russo and Southern Bank & Trust Company" that resulted in a final judgment in favor of the Florida East Coast Railway on October 28, 1924. The final judgment issued by the Dade County Circuit Court on October 28, 1924 in the condemnation proceeding stated that the land obtained by the Florida East Coast Railway from Paul Russo and the Southern Bank & Trust Company was to be used "as a right of way for the construction, location, and maintenance of the extension of its line of railroad from Okeechobee, Florida to Miami, Florida" and measures a total of .41 acres, is 25.33 feet wide along its northern border and 1.2 feet along its southern border (the Russo right-of-way). The Russo right-of-way runs north to south. To the east of the Russo right-of-way are the respective parcels of land owned by the following nine Castillo plaintiffs, which are adjacent to the Russo right-of-way, as depicted on plaintiffs' aerial map of the railroad corridor attached to their cross-motion for partial summary judgment in Castillo:

- Lourdez Rodriguez
- Alberto Perez
- Mayra Lopez
- Niraldo Hernandez Padron and Mercedes Alina Falero
- Luisa Palencia and Xiomara Rodriguez
- Reinaldo F. Castillo

- Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust
- South American Tile, LLC
- Gladys Hernandez

According to the parties' Joint Stipulations Regarding Title filed in <u>Menendez</u>, the Russo right-of-way is not mentioned as relevant to any of the parcels owned by the <u>Menendez</u> plaintiffs.

Also on October 28, 1924, the Florida East Coast Railway obtained its second right-of-way in a separate condemnation proceeding in the Dade County Circuit Court against R.S. Stanley. The final judgment entered by the Dade County Circuit Court on October 28, 1924 stated that the land obtained by the Florida East Coast Railway from R.S. Stanley (the Stanley right-of-way) was to be used "as a right of way for the construction, location, and maintenance of the extension of its line of railroad from Okeechobee, Florida to Miami, Florida." The Stanley right-of-way runs north to south, measures 1.9 acres total, is 1320 feet long, 50.54 feet wide at its norther border and 74.67 feet wide at its southern border. The Stanley right-of-way is not adjacent to any of the parcels belonging to the <u>Castillo</u> or <u>Menendez</u> plaintiffs, as depicted on plaintiffs' aerial map attached to their cross-motion for partial summary judgment in <u>Castillo</u>. In particular, as depicted on plaintiffs' aerial map, the southern portion of the Stanley right-of-way is separated from the parcels belonging to six <u>Castillo</u> plaintiffs and one <u>Menendez</u> plaintiff by the Johnson right-of-way. The six <u>Castillo</u> plaintiffs are (1) Luis Crespo, (2) Jose Luis and Grace Barsello Napole, (3) Bernardo D. and Norma A. Manduley, (4) Danilo A. and Dora Rodriguez, (5) Avimael and Odalys Arevalo, and (6) Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez. The <u>Menendez</u> plaintiff is Luis Schmidt. Further, as depicted on plaintiffs' aerial map, the northern portion of the Stanley right-of-way is separated from the parcels of land belonging to two <u>Castillo</u> plaintiffs, (1) Jose F. and Dora A. Dumenigo and (2) Humberto J. and Josefa Marcia Diaz, and two <u>Menendez</u> plaintiffs, (1) Jose Martin Martinez and Norma del Socorro Gomez and (2) Nelson Menendez and Osvaldo Borras, Jr., by the southern portion of the J. Pyles and J. Owens right-of-way.

The Florida East Coast Railway obtained its third right-of-way on November 21, 1924 in a condemnation proceeding in the Dade County Circuit Court against William H. Johnson, Seminole Fruit & Land Company, Clark G. Smith, Ethel C. Rewis, and Donald Rewis. The final judgment entered by the Dade County Circuit Court on November 21, 1924 in the condemnation proceeding stated that the land obtained by the Florida East Coast Railway (the Johnson right-of-way) was to be used "as a right of way for the construction, location, and maintenance of the extension of its line of railroad from Okeechobee, Florida to Miami, Florida." The Johnson right-of-way runs north to south, measures approximately .48 acres total, is 37.39 feet wide at its norther border and 25.33 feet wide at its southern border, and is adjacent to the properties for the following plaintiffs, as depicted on plaintiffs' aerial map of the railroad corridor attached to their cross-motions for partial summary judgment in <u>Castillo</u> and <u>Menendez</u>:

Castillo plaintiffs,

- Luis Crespo
- Jose Luis and Grace Barsello Napole
- Bernardo D. and Norma A. Manduley
- Danilo A. and Dora Rodriguez
- Avimael and Odalys Arevalo
- Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez

Menendez plaintiff,

- Luis Schmidt

The Florida East Coast Railway obtained its fourth right-of-way also on November 21, 1924 in a separate condemnation proceeding in the Dade County Circuit Court against the Seminole Fruit & Land Company. The final judgment entered by the Dade County Circuit Court on November 21, 1924 in the condemnation proceeding stated that the land obtained by the Florida East Coast Railway was to be used "as a right of way for the construction, location, and maintenance of the extension of its line of railroad from Okeechobee, Florida to Miami, Florida." The parties refer to this final judgment as the "J. Pyles, J. Owens Judgment" in their Joint Stipulations Regarding Title filed in each of the two consolidated cases currently before the court.

The J. Pyles and J. Owens right-of-way is divided into two portions, a southern portion and a northern portion. According to the aerial map submitted by the Castillo plaintiffs, the southern portion of the J. Pyles and J. Owens right-of-way shares the railroad corridor with the Stanley right-of-way. As depicted on plaintiffs' aerial map submitted in Castillo and Menendez, the Stanley right-of-way covers the western portion of the railroad corridor, and the J. Pyles and J. Owens right-of-way covers the eastern portion of the railroad corridor and is adjacent to the following plaintiffs' parcels:

Castillo plaintiffs,

- Humberto J. and Josefa Marcia Diaz
- Jose F. and Dora A. Dumenigo

Menendez plaintiffs,

- Jose Martin Martinez and Norma del Socorro Gomez
- Nelson Menendez and Osvaldo Borras, Jr.

According to the Castillo plaintiffs' aerial map of the railroad corridor attached to their cross-motion for partial summary judgment, the northern portion of the J. Pyles and J. Owens right-of-way appears to span the full width of the railroad corridor, and is adjacent to the parcels for the following two Castillo plaintiffs:

- Shops on Flagler Inc.
- Gonzalo Padron Marino, Julia Garcia and Mayda Rotella

Notably, as depicted on the plaintiffs' aerial map submitted in Castillo, this is the only portion of the railroad corridor at issue in which only one right-of-way covers the full width of the railroad corridor, which is 100 feet.

### The Zena Gardens and Princess Park Manor Subdivisions Plats

On September 30, 1947, Louis and Rebecca Merwitzer, husband and wife, platted a parcel of their land and called it the "Zena Gardens" subdivision. According to the subdivision plat for Zena Gardens, attached to the government's cross-motion for summary judgment in Castillo and to which the plaintiffs do not take issue, the western border of Zena Gardens is adjacent to the railroad corridor, which is labeled as 100 feet wide and as the "Florida East Coast Railway." According to the respective deeds submitted by the plaintiffs as attachments to their most recent complaints filed in Castillo and Menendez, the respective parcels of land owned by the following plaintiffs are located in the Zena Gardens subdivision:

Castillo plaintiffs,

- Lourdez Rodriguez
- Alberto Perez
- Mayra Lopez
- Niraldo Hernandez Padron and Mercedes Alina Falero
- Luisa Palencia and Xiomara Rodriguez
- Reinaldo F. Castillo
- Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust
- South American Tile, LLC
- Gladys Hernandez

According to the Menendez plaintiffs' deeds, none of the Menendez plaintiffs own property in the Zena Gardens subdivision.

The Zena Gardens subdivision plat states, in relevant part:

Louis Merwitzer and Rebecca Merwitzer his wife owners of the S.E. ¼ of the S.E. ¼ of Section 2, Township 54 South, Range 40 East, Miami Dade County, Florida, excepting therefrom a strip of land off the westerly side which is the right of way of the Okeechobee-Miami Extension of the Florida East Coast Railway, have caused to be made the attached plat entitled future planting, trees and shrubbery there on are hereby dedicated to the perpetual use of the Public for proper purposes reserving to the said Louis Merwitzer and Rebecca Merwitzer, his wife, their heirs, successors or assigns, the reversion or reversions thereof whenever discontinued by law.

7

On November 3, 1949, Erving and Harriett Moss, husband and wife, platted a parcel of their land and called it the "Princess Park Manor" subdivision. According to the subdivision plat for the Princess Park Manor, which was attached to the government's cross-motion for summary judgment in <u>Castillo</u> and <u>Menendez</u> and to which the plaintiffs do not take issue, the western border of Princess Park Manor is adjacent to the railroad corridor, measures 100 feet wide and labeled "East R/W Line of F.E.C. Ry." Princess Park Manor is directly north of Zena Gardens, separated only by a street. According to the respective deeds submitted by the <u>Castillo</u> and <u>Menendez</u> plaintiffs as attachments to their most recent complaints filed before the court, the respective parcels of land owned by the following remaining plaintiffs in <u>Castillo</u> and <u>Menendez</u> are located in the Princess Park Manor subdivision:

<u>Castillo</u> plaintiffs,

- Luis Crespo
- Jose Luis and Grace Barsello Napole
- Bernardo D. and Norma A. Manduley
- Danilo A. and Dora Rodriguez
- Avimael and Odalys Arevalo
- Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez
- Humberto J. and Josefa Marcia Diaz
- Jose F. and Dora A. Dumenigo
- Shops on Flagler Inc.
- Gonzalo Padron Marino, Julia Garcia and Mayda Rotella

<u>Menendez</u> plaintiffs,

- Luis Schmidt
- Jose Martin Martinez and Norma del Socorro Gomez
- Nelson Menendez and Osvaldo Borras, Jr.

The Princess Park Manor plat states, in relevant part:

That ERVING A.MOSS and HARRIETT E.MOSS his wife, owners of the South ½ of the N.E. 1/4s South of the Canal and East of the Florida East Coast Right-of-Way, located in Sec. 2 TWP.54 South, RGE. 40 East, Dade County, Florida; being the land East of the Florida East coast Right-of-Way and between Flagler Street and the Tamiami Canal and extending East to Ludlum Road, <u>ALSO</u> The West ½ of the Northeast ¼ of the Southeast ¼ less the Florida East Coast Right-of-Way all in Sec. 2 Township 54 South RGE.40 East, Dade County, Florida, said Florida East Coast Right-of-Way being the right-of-way of the Okeechobee Miami Extension of the Florida East Coast Railway, have caused to made the attached Plat entitled "PRINCESS PARK MANOR"

8

> The Streets, Avenues, Roads, Terraces, Courts and Alleys as shown together with all existing and future planning, trees and shrubbery thereon are hereby dedicated to the perpetual use of the public for proper purposes, reserving to the said ERVING A.MOSS and HARRIETT E.MOSS, his wife, their heirs; successors or assigns, the reversion or reversions thereof whenever discontinued by law.

(capitalization and emphasis in original).

### The Castillo and Menendez Plaintiffs Obtain Title in Discrete Parcels of Land in the Zena Gardens and Princess Park Manor Subdivisions.

Between March 1977 and July 2016, the Castillo and Menendez plaintiffs acquired title in their respective parcels of land in the Princess Park Manor and Zena Gardens subdivisions. Each of the plaintiffs' deeds in Castillo and Menendez conveying them title to their respective parcel states that the respective grantor granted, bargained, and sold to plaintiff-grantee the respective parcel of land, located in either Princess Park Manor or Zena Gardens. None of the deeds for any of the plaintiffs in Castillo and Menendez provide the measurements of the respective parcel. Instead, the deeds for all plaintiffs in Castillo and Menendez state the particular subdivision in which the parcel is located, the parcel's "[l]ot" number in the subdivision and references the particular subdivision plat in which the parcel is located. For example, the warranty deed for Menendez plaintiff Jose Martin Martinez and Norma Del Socorro Gomez states that on May 31, 2005:[3]

> [G]rantor [Margaret Ann Arguelles], for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee [Jose Martin Martinez and Norma Del Socorro Gomez], the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in **Miami-Dade County, Florida** to-wit:
>
> **Lot 15, Block 11, of PRINCESS PARK MANOR, according to the Plat thereof, recorded in Plat Book 50, at Page 18, in the Public Records of Miami-Dade County, Florida.**
> **Parcel Identification Number: 0140020021710**

(capitalization and emphasis in original). Each of the parcels of land belonging to the Castillo and Menendez plaintiffs is depicted on either the Zena Gardens plat or Princess Park Manor plat, which displays the measurement of the particular parcel of land. All of the parcels belonging to the plaintiffs in Castillo and Menendez are depicted on the subdivision plats as being directly to the east of the railroad corridor. Notably, none of the

---

[3] The numbering and grouping of the Castillo and Menendez plaintiffs in this opinion reflects the grouping and numbering of plaintiffs indicated in the respective complaints and in the parties' filings in Castillo and Menendez.

parcels as depicted on either the Zena Gardens plat or Princess Park Manor plat extend onto the railroad corridor.

In 2004, service over the railroad corridor ceased when the Florida East Coast Railway temporarily closed off a portion of the railway to perform emergency repair work on a bridge at milepost 12.23+. The temporary closure blocked access to the railroad corridor. When the section of the railroad opened again, shippers did not resume rail service and, according to the combined environmental and historical report attached to the Florida East Coast Railway's abandonment petition before the United States Surface Transportation Board (STB), both of which were included as exhibits to plaintiffs' cross-motions for partial summary judgment in <u>Castillo</u> and <u>Menendez</u>, there were "no new sources of potential local traffic."

**The Florida East Coast Railway Begins the Abandonment Process of the Railroad Corridor.**

On January 21, 2016, the Florida East Coast Railway began the process to "abandon" the railroad corridor at issue by filing a verified notice of exemption with the STB.[4]  The Florida East Coast Railway's January 21, 2016 Verified Notice of Exemption

---

[4] When a railroad carrier wants to abandon or cease service over its railway line, the railroad carrier must obtain authorization from the STB by filing an application to abandon or discontinue service, pursuant to 49 U.S.C. § 10903(a)(1) (2012), which states:

> A rail carrier providing transportation subject to the jurisdiction of the [Surface Transportation] Board under this part who intends to – (A) abandon any part of its railroad lines; or (B) discontinue the operation of all rail transportation over any part of its railroad lines, must file an application relating thereto with the Board. An abandonment or discontinuance may be carried out only as authorized under this chapter.

The railroad line company may file a verified notice of exemption of abandonment in order to be exempt from the various abandonment requirements under 49 U.S.C. § 10903 (2012), such as sending a "notice of the [abandonment] application to the chief executive officer of each State that would be directly affected by the proposed abandonment or discontinuance." 49 U.S.C. § 10903(a)(3); <u>see</u> 49 C.F.R. § 1152.50(a)(1) (2018) ("A proposed abandonment or discontinuance of service or trackage rights over a railroad line is exempt from the provisions of 49 U.S.C. 10903 if the criteria in this section are satisfied."). In order to qualify for the exemption, the carrier

> certifies that no local traffic has moved over the line for at least 2 years and any overhead traffic on the line can be rerouted over other lines and that no formal complaint filed by a user of rail service on the line (or a state or local government entity acting on behalf of such user) regarding cessation of service over the line either is pending with the Board or any U.S. District Court or has been decided in favor of the complainant within the 2–year period. The complaint must allege (if pending), or prove (if decided) that the

stated that the Florida East Coast Railway "plans to abandon the Line, salvage the track and materials and convert the property to trail use." On February 10, 2016, the STB published the notice exemption in the Federal Register and the exemption became effective on March 11, 2016. On October 31, 2016, the Florida East Coast Industries, LLC sent a letter to the STB requesting a "notice of interim trail use/rail banking" over the railroad corridor and submitting its willingness to assume financial responsibility pursuant to 49 C.F.R § 1152.29 (2016). On November 1, 2016, the Florida East Coast Railway sent a letter to the STB stating it "agree[d] to negotiate interim trail use/rail banking for the Line with FECI [Florida East Coast Industries]." On November 21, 2016, the STB invoked section 8(d) of the Trails Act, and issued its "DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT" (NITU), authorizing the Florida East Coast Railway to negotiate a trail use agreement with the Florida East Coast Industries. (capitalization in original). On July 18, 2017, the Florida East Coast Railway notified the STB that it had entered a purchase sale agreement with the Florida East Coast Industries for the "rail banking/interim trail use" of the rail line at issue.

## PROCEDURAL HISTORY

On December 7, 2016, Reinaldo Castillo filed the original complaint in <u>Reinaldo Castillo v. United States</u>, Case No. 16-1624 before this court. On March 31, 2017, Mr. Castillo amended the complaint to join an additional twenty-two plaintiffs and then, on September 29, 2017, amended once more to dismiss certain plaintiffs, resulting in the current nineteen plaintiffs in <u>Castillo</u>. They are: (1) Reinaldo Castillo, (2) Avimael and Odalys Arevalo, (3) Luis Crespo, (4) Hugo E. and Concepcion V. Diaz as Co-Trustees of The Diaz Family Revocable Trust, (5) Humberto and Josefa Marcia Diaz, (6) Jose F. and Dora A. Dumenigo, (7) Dalia Espinosa, Daniel Espinosa and Sofia Gonzalez, (8) Gladys Hernandez, (9) Niraldo Hernandez Padron and Mercedes Alina Falero, (10) Mayra Lopez, (11) Bernardo D. and Norma A. Manduley, (12) Jose Luis and Grace Barsallo Napole, (13) Gonzalo Padron Marino, Julia Garcia, and Mayda Rotella, (14) Luisa Palencia and Xiomara Rodriguez, (15) Alberto Perez, (16) Danilo A. and Dora Rodriguez, (17) Lourdez Rodriguez, (18) Shops on Flager, Inc., and (19) South American Title, LLC.

Subsequently, on December 12, 2017, the <u>Menendez</u> plaintiffs filed their complaint in <u>Nelson Menendez, et al., v. United States</u>, Case No. 17-1931, originally before Judge Thomas Wheeler of this court, which included the following plaintiffs: (1) Nelson Menendez and Osvaldo Borras, Jr., and (2) Luis R. Schmidt. Case No. 17-1931 was then transferred to the undersigned on December 28, 2017. The <u>Menendez</u> complaint raises the same issues of law and fact as alleged by the <u>Castillo</u> plaintiffs, and the <u>Menendez</u> plaintiffs allege they own land underlying the same section of the railroad corridor at issue in <u>Castillo</u>. The plaintiffs and defendant in both <u>Castillo</u> and <u>Menendez</u> also are

---

carrier has imposed an illegal embargo or other unlawful impediment to service.

49 C.F.R. § 1152.50(b).

represented by the same legal counsel, who filed a joint notice before this court also stating that the "same issues of law and facts apply to both cases." The court, therefore, ordered the two cases consolidated on January 12, 2018. On January 19, 2018, the <u>Menendez</u> plaintiffs filed an amended complaint, adding one more plaintiff, resulting in the following three, current plaintiffs in <u>Menendez</u>: (1) Nelson Menendez and Osvaldo Borras, Jr., (2) Jose Martin Martinez and Norma Del Socorro Gomez, and (3) Luis R. Schmidt.

In their most recently filed complaints, the <u>Castillo</u> and <u>Menendez</u> plaintiffs all allege they are "Florida landowners who are owed compensation for their property rights taken by the federal government as a result of its authorization that the right-of-way be converted to a public recreational trail." Both complaints state that each of the plaintiffs owned their property on November 21, 2016, when the STB issued the NITU, and that each of the plaintiffs' "property abuts[5] and underlies the former Railroad right-of-way, which is now subject to an easement for an interim public-access trail and possible future railroad reactivation." The <u>Castillo</u> and <u>Menendez</u> plaintiffs claim that the government "took these Florida owners' land for a public recreational trail by an order of the federal Surface Transportation Board invoking a provision of the federal Trails Act." They also claim that "when the federal government authorizes a public recreational trail across an owner's land, the fifth amendment requires the government to compensate the owner." The <u>Castillo</u> and <u>Menendez</u> plaintiffs allege they have not received compensation for the government's alleged takings. Both sets of plaintiffs seek "full fair-market value of the property taken by the government on the date it was taken," including "severance damage," "delay" damages, litigation costs and attorneys' fees, and such further relief the court deems just and proper.

The parties filed Joint Stipulations Regarding Title in both cases and have stipulated to certain threshold issues. The parties in <u>Castillo</u> and <u>Menendez</u> agree that all plaintiffs in both cases owned their corresponding parcels on November 21, 2016, when the STB issued the NITU, and that plaintiffs' corresponding parcels are "[a]djacent" to the railroad corridor. The parties in both <u>Castillo</u> and <u>Menendez</u> also stipulate that the rights-of-way the Florida East Coast Railway obtained through the four final judgments in the condemnation proceedings were each an "[e]asement."[6]

---

[5] Plaintiffs state in their complaints in <u>Castillo</u> and <u>Menendez</u> that their respective properties "abut" the railroad corridor. It appears, however, that both sets of plaintiffs, use the term "abut" interchangeably with "adjacent" in their filings in <u>Castillo</u> and <u>Menendez</u>. In the parties' Joint Stipulations Regarding Title filed in both <u>Castillo</u> and <u>Menendez</u>, the parties state that the respective properties for both sets of plaintiffs are "[a]djacent" to the railroad corridor. Likewise, the government states in its cross-motion for partial summary judgment in <u>Castillo</u> and its cross-motion for summary judgment in <u>Menendez</u> that all of the plaintiffs' properties are "adjacent" to the railroad corridor.

[6] The parties do not state in the Joint Stipulations Regarding Title their respective positions on the nature of the interest obtained by the Florida East Coast Railway through the Holman deed. According to the parties' Joint Stipulations Regarding Title in <u>Castillo</u>,

As indicated above, the parties attached to their Joint Stipulations Regarding Title in both Castillo and Menendez a table, which displays each plaintiff's name, claim number, parcel number of the plaintiff's particular parcel located in either the Zena Gardens or Princess Park Manor subdivision. Each table also displays the "Applicable RR [railroad] Conveyance," for each of the plaintiffs' parcels, which refers to the particular conveyance, namely, one of the four condemnation proceedings or the Holman deed, in which the Florida East Coast Railway obtained a piece of the railroad corridor at issue in Castillo and Menendez. Each table also displays the "Nature of RR [railroad] Ownership," which refers to the particular interest the Florida East Coast Railway obtained in each of the conveyances at issue in Castillo and Menendez. Each table also indicates that each plaintiff in Castillo and Menendez owned his or her particular parcel of land on the NITU date and states that each of the Castillo and Menendez plaintiffs' parcels are "Adjacent to ROW [right-of-way]." Each of the tables attached to the Joint Stipulations Regarding Title submitted to the court in Castillo and Menendez, respectively, on August 22, 2017 and February 23, 2018, are displayed below.

---

the interest in the portion of the railroad corridor obtained by the Florida East Coast Railway through the 1923 Holman deed is described as "[d]isputed."

Castillo, et al., v. United States, Case No. 16-1624[7]

| Claim Number | Plaintiffs | Parcel Number | Owned Parcel on NITU Date | Adjacent to ROW [right-of-way] | Applicable RR [Railroad] Conveyance | Nature of RR [Railroad] Ownership |
|---|---|---|---|---|---|---|
| 12 | Gonzalo Padron Marino and Julia Garcia; and Mayda Rotella | 01-4002-002-0220 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208) | Easement |
| 17 | Shops on Flagler, Inc. | 01-4002-002-1780 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208) | Easement |
| 21 | Jose F. and Dora A. Dumenigo | 01-4002-002-1730 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208); R. Stanley Judgment (Bk 24, Pg 91) | Easement |

---

[7] On August 24, 2017, the court dismissed from the case the following three Castillo plaintiffs, (1) Daisy H.F. LLC, (2) Lion Miami Terrace, LLC, and (3) Jorge and Beatrice Ugan. The parties did not include these three dismissed plaintiffs in the table. The Castillo table above, however, still displays "Lioni Investments, LLC," as three separate plaintiffs in Castillo on the table. On September 6, 2017, the Castillo plaintiffs moved to voluntarily dismiss the three Lioni Investments plaintiffs subsequent to the filing of the parties' Joint Stipulations Regarding Title. The court dismissed the Lioni Investments plaintiffs on September 8, 2017. The Castillo plaintiffs did not submit an updated Joint Stipulations Regarding Title to the court following the dismissal of the Lioni Investments plaintiffs. Therefore, although, the table above displays twenty-two plaintiffs in Castillo, currently there are only nineteen plaintiffs in Castillo, as previously indicated.

| 22 | Humberto J. and Josefa Marcia Diaz | 01-4002-002-1720 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
|----|------|------|-----|-----|------|------|
| 29 | Luis Crespo | 01-4002-002-1650 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 30 | Jose Luis and Grace Barsello Napole | 01-4002-002-1640 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 31 | Bernardo D. and Norma A. Manduley | 01-4002-002-1630 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 33 | Danilo A. and Dora Rodriguez | 01-4002-002-1610 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 34 | Avimael and Odalys Arevalo | 01-4002-002-1600 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 36 | Dalia Espinosa, Daniel Espinosa and Sofira Gonzalez | 01-4002-002-1580 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 39 | Lioni Investments, LLC | 01-4002-033-0012 | Yes | Yes | G. Holman Deed (Bk 362, Pg 186) | Disputed |
| 40 | Lioni Investments, LLC | 01-4002-019-0040 | Yes | Yes | G. Holman Deed (Bk 362, Pg 186) | Disputed |
| 41 | Lioni Investments, LLC | 01-4002-019-0070 | Yes | Yes | G. Holman Deed (Bk 362, Pg 186) | Disputed |

| 43 | Lourdez Rodriguez | 01-4002-001-1370 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
|----|-------------------|------------------|-----|-----|---------------------------------------------------------------------|------------------------------------------|
| 44 | Alberto Perez | 01-4002-001-1380 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 45 | Mayra Lopez | 01-4002-001-1390 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 46 | Niraldo Hernandez Padron and Mercedes Alina Falero | 01-4002-001-1400 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 47 | Luisa Palencia and Xiomara Rodriguez | 01-4002-001-1410 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 49 | Reinaldo F. Castillo | 01-4002-001-1430 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 50 | Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust | 01-4002-001-1440 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |
| 51 | South American Tile, LLC | 01-4002-001-1450 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Easement; Deed Disputed |
| 52 | Gladys Hernandez | 01-4002-001-1460 | Yes | Yes | P. Russo Judgment (Bk 24, Pg 83); G. Holman Deed (Bk 362, Pg 186) | Condemnation - Easement; Deed Disputed |

<u>Menendez, et al., v. United States</u>, Case No. 17-1931

| <u>Claim Number</u> | <u>Plaintiffs</u> | <u>Parcel Number</u> | <u>Owned Parcel on NITU Date</u> | <u>Adjacent to ROW [right-of-way]</u> | <u>Applicable RR [Railroad] Conveyance</u> | <u>Nature of RR [Railroad] Ownership</u> |
|---|---|---|---|---|---|---|
| 1 | Jose Martin Martinez and Norma del Socorro Gomez | 01-4002-002-1710 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 2 | Nelson Menendez and Osvaldo Borras, Jr. | 01-4002-002-1690 | Yes | Yes | J. Pyles, J. Owens Judgment (Bk 24, Pg 208); R. Stanley Judgment (Bk 24, Pg 91) | Easement |
| 3 | Luis R. Schmidt | 01-4002-002-1660 | Yes | Yes | W. Johnson Judgment (Bk 24, Pg 207); R. Stanley Judgment (Bk 24, Pg 91) | Easement |

The parties each have filed motions for partial summary judgment in both of the consolidated cases. In Castillo, plaintiffs seek partial summary judgment as to the government's liability for taking their property without just compensation for the portions of the railroad corridor granted to the Florida East Coast Railway in the four condemnation proceedings in the Dade County Circuit Court. Plaintiffs do not move for summary judgment as to the portion of the railroad corridor that the Florida East Coast Railway obtained through the Holman deed. The government, in turn, seeks partial summary judgment that it is not liable for any takings of the railroad corridor obtained in the Holman deed because the Holman deed granted fee simple title to the Florida East Coast Railway as to that portion of the railroad corridor. According to the government, because the Florida East Coast Railway obtained fee simple title through the Holman deed, the Castillo plaintiffs have no interest in this portion of the railroad corridor, and, thus, the court should grant summary judgment in its favor that there was not a taking as to this portion of the railroad corridor. The government, however, has not cross-moved for partial summary judgment as to the portions of the railroad corridor the Florida East Coast Railway obtained through condemnation through the four separate condemnation orders in 1924.

In Menendez, plaintiffs seek partial summary judgment as to the government's takings liability for their property without just compensation regarding the portions of the railroad corridor granted to the Florida East Coast Railway in three of the four condemnation proceedings in the Dade County Circuit Court, the Johnson, Stanley, and J. Pyles and J. Owens proceedings. The Russo proceeding, the fourth condemnation proceeding, is not applicable to the Menendez plaintiffs because none of the plaintiffs' properties are located near, let alone adjacent to, the portion of the railroad corridor obtained through the Russo right-of-way, as evidenced by plaintiffs' aerial map attached to their cross-motion for partial summary judgment in Menendez, to which defendant does not take issue. Similarly, as evidenced by plaintiffs' aerial map, none of the properties belonging to the Menendez plaintiffs are situated near the land the Florida East Coast Railway obtained through the Holman deed, and, thus, the Holman deed is not applicable to the Menendez plaintiffs. The government, in turn, seeks partial summary judgment in Menendez that it is not liable for any alleged takings of the railroad corridor at issue because plaintiffs cannot prove that they own the land underlying the rights-of-way at issue.

## DISCUSSION

The court considers the parties' cross-motions for partial summary judgment in Castillo and Menendez. Rule 56 of the United States Court of Federal Claims Rules (RCFC) is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a) (2017); Fed. R. Civ. P. 56(a) (2018); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States,

713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010); cert. denied, 564 U.S. 1004 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl.

at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)) (citation omitted), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Grp., Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 562 U.S. 827 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion

declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; and Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, 119 Fed. Cl. 751, 757-58 (2015), subsequent determination, 129 Fed. Cl. 742 (2017), aff'd, 708 F. App'x 685 (Fed. Cir. 2018). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Fla. Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc.

v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968-69; Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010), aff'd, 814 F.3d 1299 (2015); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378 (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

In the above-captioned cases, all Castillo and Menendez plaintiffs allege that defendant effected a taking under the Fifth Amendment to the United States Constitution through the operation of the Trails Act. The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Penn Cent. Transp. Co. v.

City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified"); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 559 U.S. 935 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009).

"[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. at 520 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984)); see also Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1336 (Fed. Cir. 2007); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (Preseault I) (quoting United States v. Causby, 328 U.S. 256, 267 (1946)); see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1368 (Fed. Cir. 2005); Narramore v. United States, 960 F.2d 1048, 1052 (Fed. Cir. 1992); Hardy v. United States, 127 Fed. Cl. 1, 7 (2016), recons. granted in part, 129 Fed. Cl. 513 (2016); Perry v. United States, 28 Fed. Cl. 82, 84 (1993).

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (stating that the "'classic taking'" is one in which the government directly appropriates private property for its own use (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 324 (2002)), cert. denied, 136 S. Ct. 2461 (2016); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing M & J Coal

Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. See Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; Jackson v. United States, 135 Fed. Cl. 436, 444 (2017) (citation omitted). Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); Piszel v. United States, 833 F.3d 1366, 1374 (Fed. Cir. 2016), cert. denied, 138 S. Ct. 85 (2017); Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015); Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002); and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003)). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381; and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005); see also Balagna v. United States, 135 Fed. Cl. 16, 22 (2017), recons. denied, No. 14-21L, 2017 WL 5952123 (Fed. Cl. Dec. 1, 2017). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372); see also Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348.

The STB has authority to regulate most railroad lines in the United States. See 49 U.S.C. § 702 (2012). A railroad seeking to abandon any part of its railroad line must either (1) file an application to abandon or (2) file a notice of exemption to abandon the line. See 49 U.S.C. § 10903 (2012); see also 49 C.F.R. § 1152.50 (2018). "If the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004) (citing Preseault I, 494 U.S. at 6-8), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

"The Trails Act is designed to preserve railroad rights-of-way by converting them into recreational trails." Bywaters v. United States, 670 F.3d 1221, 1225 (Fed. Cir.), reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012). By operation of the Trails Act, the STB may issue a NITU, "suspending exemption proceedings for 180 days to allow a third party to enter into an agreement with the railroad to use the right-of-way as a recreational trail." Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 549 U.S. 1209 (2007). Section 8(d) of the Trails Act, codified at 16 U.S.C. § 1247(d) (2012), "allows a railroad to negotiate with a state, municipal, or private group ('the trail operator') to assume financial responsibility for operating the railroad right of way as a recreational trail." See Bright v. United States, 603 F.3d 1273, 1275 (Fed. Cir.) (citing Caldwell v. United States, 391 F.3d at 1229), reh'g and reh'g en banc denied (Fed. Cir. 2010). If the railroad and an authorized trail provider[8] reach an agreement, the NITU extends indefinitely, and the corridor is railbanked, with interim trail use permitted. See 49 C.F.R. § 1152.29(d)(1)-(2) (2018) ("The NITU will indicate that interim trail use is subject to future restoration of rail service . . . . Additionally, the NITU will provide that if the sponsor intends to terminate interim trail use on all or any portion of the right-of-way covered by the interim trail use agreement, it must send the [STB] a copy of the NITU and request that it be vacated on a specific date."); see also Biery v. United States, 753 F.3d at 1285 ("If the railroad and the [Surface Transportation] Board reach agreement, the land underlying the railway may be transferred to a trail operator (e.g., state, political subdivision, or qualified private organization) for interim trail use." (citing Citizens Against Rails–to–Trails v. Surface Transp. Bd., 267 F.3d 1144, 1149 (D.C. Cir. 2001))); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) ("The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities." (quoting Neb. Trails Council v. Surface Transp. Bd., 120 F.3d 901, 903 n.1 (8th Cir. 1997))), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

When the NITU extends indefinitely and the corridor is railbanked, the STB retains jurisdiction and abandonment of the railroad corridor is blocked. See 16 U.S.C. § 1247(d) ("[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."); see also Rasmuson v. United States, 807 F.3d 1343, 1344 (Fed. Cir. 2015) ("NITUs 'preserve established railroad rights-of-way for future reactivation of rail service' and permit the railroad operator to cease operation without legally abandoning any 'rights-of-way for railroad purposes.'" (quoting 16 U.S.C. § 1247(d))).

---

[8] The Trails Act indicates that a trail provider may be "a State, political subdivision, or qualified private organization [that] is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way." 16 U.S.C. § 1247(d).

As described by the United States Court of Appeals for the Federal Circuit:

Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments-Use of Rights-of-Way as Trails, Ex Parte No. 274 (Sub-No. 13), 2 I.C.C. 2d 591, 1986 WL 68617 (1986). A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. See Preseault II, 100 F.3d at 1552; see also Toews [v. United States], 376 F.3d at 1376.

Caldwell v. United States, 391 F.3d at 1229; see also Rogers v. United States, 814 F.3d at 1303 ("As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a Notice of Interim Trail Use ('NITU') to suspend the abandonment of the rail line by a railroad and preserve it for future active railroad use." (citing Barclay v. United States, 443 F.3d at 1373)); BHL Props., LLC v. United States, 135 Fed. Cl. 222, 227-28 (2017) (citing Caldwell v. United States, 391 F.3d at 1233).

The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of railroad rights of way for recreational trail use by means of 16 U.S.C. § 1247(d) of the Trails Act, as follows:

(1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (Preseault II). Phrased differently, the Federal Circuit has also indicated:

the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time

held a fee simple unencumbered by the easement (abandonment of the easement).

Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing Preseault II, 100 F.3d at 1533); see also Chi. Coating Co. v. United States, No. 14-625, 2018 WL 2769098, at *4 (Fed. Cir. June 11, 2018) (citing Ellamae Phillips Co. v. United States, 564 F.3d at 1373).

According to the United States Court of Appeals for the Federal Circuit, "[i]t is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010), reh'g and reh'g en banc denied, 646 F.3d 910 (Fed. Cir. 2011);[9] see also Rogers v. United States, 814

---

[9] Despite the apparently clear language in Ladd, the Federal Circuit, in an unpublished decision, raised questions about the viability of the Ladd decision going forward. In Caquelin v. United States, 697 F. App'x 1016 (Fed. Cir. 2017), the Federal Circuit observed:

> We think it clear that application of this court's decision in Ladd would lead to affirmance of the Court of Federal Claims' judgment in this case. We also think that this panel cannot declare Ladd no longer to be good law based on the Supreme Court's post-Ladd decision in Arkansas Game, on which the government heavily relies. Nevertheless, in requiring a multi-factor analysis of the repeated floodings at issue as "temporary physical invasion [s]," [Arkansas Game & Fish Commission v. United States,] 568 U.S. at 38, 133 S. Ct. 511, Arkansas Game does raise questions about Ladd. Those questions supplement the questions raised (including by the author of Ladd) when Ladd was decided. See Ladd v. United States, 646 F.3d 910 (Fed. Cir. 2011) (Gajarsa, J., joined by Moore, J., dissenting from denial of rehearing en banc). En banc review may be warranted to address those questions, in light of the full range of Supreme Court decisions, and to decide whether Ladd should remain governing precedent.

Caquelin v. United States, 697 F. App'x at 1019.  In Arkansas Game & Fish Commission v. United States, 568 U.S. 23 (2012), the United States Supreme Court addressed a temporary flooding case and observed that temporary physical takings involve "temporary invasions of property, "'subject to a more complex balancing process to determine whether they are a taking.'" Arkansas Game & Fish Comm'n v. United States, 568 U.S. at 36 (quoting Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. at 435 n.12). The Supreme Court in Arkansas Game & Fish Commission concluded: "We rule today, simply and only, that government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection. When regulation or temporary physical invasion by government interferes with private property, our decisions recognize, time is indeed a factor in determining the existence vel non of a compensable taking." Id. at 38.  The Supreme Court indicated a multi-factor approach is required, and further noted

F.3d at 1303; Ellamae Phillips Co. v. United States, 564 F.3d at 1373. "It is the law-created right to own private property, recognized and enforced by the Constitution, legislation, and common law, that gives the owner an historically rooted expectation of compensation." Preseault II, 100 F.3d at 1540. The United States Court of Appeals for the Federal Circuit in Preseault II also indicated

> that power includes the power to preempt state-created property rights, including the rights to possession of property when railroad easements terminate. As Justice O'Connor succinctly pointed out in her concurring opinion in Preseault I, however, having and exercising the power of preemption is one thing; being free of the Constitutional obligation to pay just compensation for the state-created rights thus destroyed is another.

Id. at 1537 (citing Preseault I, 494 U.S. at 22).

To determine the nature of the property interest at issue, the court looks to state law. See Chi. Coating Co. v. United States, 2018 WL 2769098, at *4 ("[W]e must apply the law of the state where the property interest arises."); Rogers v. United States, 814 F.3d at 1305 ("We analyze the property rights of the parties in a rails-to-trails case under the relevant state law."). The United States Court of Appeals for the Federal Circuit, interpreting a takings claim for a railroad right-of-way, stated that, "state law generally creates the property interest in a railroad right-of-way." Barclay v. United States, 443 F.3d at 1374 (citing Preseault I, 494 U.S. at 8, 16). In a footnote on the same page, the United States Court of Appeals for the Federal Circuit repeated, "[i]n Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), we reiterated that state law controls the basic issue of whether trail use is beyond the scope of the right-of-way." Barclay v. United States, 443 F.3d at 1374 n.4. "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred. 'State law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d).'" Chevy Chase Land Co. of Montgomery Cty. v. United States, 37 Fed. Cl. 545, 565 (1997) (quoting Preseault I, 494 U.S. at 20 (O'Connor, J., concurring) (citing Ruckelshaus v. Monsanto Co., 467 U.S. at 1001)), aff'd, 230 F.3d 1375 (Fed. Cir. 1999), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 531 U.S. 957 (2000); see also Whispell Foreign Cars, Inc. v. United States, 97 Fed. Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), amended after recons. in part, 100 Fed. Cl. 529 (2011). Moreover, in Ruckelshaus v. Monsanto Co., 467 U.S. at 1001, the Supreme Court stated, "we are mindful of the basic axiom that '"[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" (quoting

---

that before the Federal Circuit, the government "challenged several of the trial court's factfindings [sic], including those relating to causation, foreseeability, substantiality, and the amount of damages. Because the Federal Circuit rested its decision entirely on the temporary duration of the flooding, it did not address those challenges." Id. at 40.

<u>Webb's Fabulous Pharmacies, Inc. v. Beckwith</u>, 449 U.S. 155, 161 (1980) (quoting <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972))) (omission in original). In <u>Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.</u>, 429 U.S. 363 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." <u>Id.</u> at 378; <u>see</u> <u>also</u> <u>Davies Warehouse Co. v. Bowles</u>, 321 U.S. 144, 155 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state."). The parties do not dispute that Florida law applies to the above-captioned cases.

### The Government's Cross-Motion for Partial Summary Judgment in <u>Castillo</u> as to the Portion of the Railroad Corridor the Florida East Coast Railway Obtained Through the Holman Deed in 1923.

In <u>Castillo</u>, the government has cross-moved for partial summary judgment "as to the railroad's ownership of portions of the rail line" that the Florida East Coast Railway "acquired by [the Holman] deed." The government contends in its cross-motion that "under applicable Florida law, the Holman deed conveyed fee simple title to the railroad" and "[p]laintiffs, as the owners of land adjacent to the subject corridor, have no ownership interest in the portion of the corridor conveyed to the railroad in fee by this deed." The <u>Castillo</u> plaintiffs whose takings claims are at issue in the government's cross-motion are the following nine plaintiffs: (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez.

These nine <u>Castillo</u> plaintiffs each own a parcel of land that is "[a]djacent" to the railroad corridor, as stipulated to by the parties in their Joint Stipulations Regarding Title. This particular portion of the railroad corridor, however, was not obtained by the Florida East Coast Railway in one singular conveyance. The Florida East Coast Railway obtained the western portion of the railroad corridor at issue through the 1923 written conveyance in the Holman deed. The exact nature of the interest the Florida East Coast Railway obtained in this portion of the railroad corridor through the Holman deed is "[d]isputed" by the parties. According to the aerial map attached to the <u>Castillo</u> plaintiffs' motion for partial summary judgment, which defendant does not dispute, and which depicts the location of the four rights-of-way obtained through condemnation and the land referenced in the Holman deed, the land referenced in the Holman deed does not span the entire width of the railroad corridor. In 1924, the Florida East Coast Railway obtained the Russo right-of-way over the eastern and remaining portion of the railroad corridor through the condemnation proceeding in the Dade County Circuit Court. Directly to the east of the Russo right-of-way are the nine parcels of land belonging to the nine <u>Castillo</u> plaintiffs (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family

Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez, as depicted by plaintiffs' aerial map of the railroad corridor attached to their cross-motion for partial summary judgment in <u>Castillo</u>. Further, the parties agree in their Joint Stipulations Regarding Title that the Holman conveyance and the Russo right-of-way are the two "[a]pplicable" conveyances to these nine <u>Castillo</u> plaintiffs.

These nine <u>Castillo</u> plaintiffs responded to the government's cross-motion for partial summary judgment as to the Holman conveyance that none of the <u>Castillo</u> plaintiffs are "seeking summary judgment [in their cross-motion for partial summary judgment] for any land described in the 1923 Holman Deed." The nine <u>Castillo</u> plaintiffs also responded that:

> The government's cross-motion for summary judgement fails because, even if one accepts the government's argument that the landowners' motion for summary judgement should not be granted, the government fails to present uncontroverted evidence supporting its supposition that, as a matter of undisputed fact and law, some other party owned the land under the abandoned railroad right-of-way.[10]

[10] The <u>Castillo</u> plaintiffs appear to mischaracterize defendant's position. As an initial matter, defendant's cross-motion for partial summary judgment in <u>Castillo</u> pertains only to "the portion of the subject railroad corridor that the railroad acquired in fee by deed" from the Holmans in 1923. Further, in its cross-motion for partial summary judgment in <u>Castillo</u>, defendant never alleges, as asserted by plaintiff, that "some other party" owned the land following the Holman conveyance. Instead, defendant identifies the party it believes owned the land following the Holman conveyance. Defendant states in its cross-motion for partial summary judgment in <u>Castillo</u> that the "Florida East Coast Railway" acquired the land as a result of the Holman conveyance, stating that "by a deed, and under applicable Florida law, that [the Holman] deed conveyed fee simple title to the railroad."

Further, defendant, in its cross-motion for partial summary in <u>Castillo</u>, responds to and opposes the <u>Castillo</u> plaintiffs' cross-motion for partial summary judgment as to those portions of the railroad corridor obtained through the four condemnation proceedings brought by the Florida East Coast Railway in the Dade County Circuit Court in 1924. Nowhere in its response and opposition to plaintiffs' cross-motion for partial summary judgment does defendant allege that "some other party owned the land under the abandoned railroad right-of-way." Instead, defendant responds that none of the <u>Castillo</u> plaintiffs have

> fully met their burden to establish the extent of their ownership interest, if any, in the railroad corridor adjacent to their property, which is a necessary prerequisite to determining whether there has been a taking of that alleged interest. Plaintiffs' failure to submit supporting evidence establishing, as a matter of Florida law, that they are the fee owners of some or all of the easement segments of the corridor requires the denial of their cross-motion for partial summary judgment.

Although none of the Castillo plaintiffs are currently seeking partial summary judgment as to the portion of the railroad corridor obtained through the Holman deed, the nine Castillo plaintiffs have alleged in past filings that they own the portion of the railroad corridor obtained through the Holman deed. In particular, these nine plaintiffs each allege, in the second amended and most recent complaint filed in Castillo on September 29, 2017, that they each own a parcel of land that not only "abuts" but also "underlies the former Railroad right-of-way." Because the alleged "Railroad right-of-way" that is adjacent to the parcels allegedly belonging to these nine Castillo plaintiffs, is comprised of both the Russo right-of-way and the result of the Holman conveyance, whether these nine Castillo plaintiffs own the land underlying what was included in the Holman conveyance is at issue. Moreover, the parties in Castillo stipulated in their Joint Stipulations Regarding Title that the Holman conveyance and Russo right-of-way are the two railroad conveyances that are "[a]pplicable" to these nine Castillo plaintiffs' takings claims. Furthermore, the nine Castillo plaintiffs and defendant also indicated in the Joint Stipulations Regarding Title filed in Castillo that the nine Castillo plaintiffs and defendant "[d]isputed" the nature of the railroad's interest obtained in the railroad corridor through the Holman deed.

Under Florida law, "[t]he language of the deed determines the nature of the estate conveyed." Rogers v. United States, 184 So. 3d 1087, 1097 (Fla. 2015) (finding that the deeds were clear in their language and conveyed fee simple title). When the language of the deed is clear, "then the intention of the grantor must be ascertained from that language." Mason v. Roser, 588 So. 2d 622, 624 (Fla. Dist. Ct. App. 1991); see also Cohen v. Pan Am. Aluminum Corp., 363 So. 2d 59, 60 (Fla. Dist. Ct. App. 1978); Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975) ("When the language of a deed is clear  . . . there is no room for judicial construction of the language nor interpretation of the words used."). When the language of the deed is not clear, a court should "consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent." Reid v. Barry, 112 So. 846, 863 (Fla. 1927).

A deed which contains restrictions on land use or reversionary clauses "suggests an intent to create an easement or convey something less than a fee estate." Rogers v. United States, 107 Fed. Cl. 387, 396 (2012) (interpreting Florida law), aff'd, 814 F.3d 1299 (Fed. Cir. 2015); see also Irv Enters., Inc. v. Atl. Island Civic Ass'n, 90 So. 2d 607, 609 (Fla. 1956) (finding that the deed at issue, which contained restrictions on use and a reversion provision, as granting an easement). Conversely, an instrument that lacks any

_____

As previously noted, the Castillo plaintiffs, as the parties asserting takings claims and moving for summary judgment, have the burden on summary judgment to prove that they have cognizable interests in the land underlying the railroad corridor in order to establish takings claims before this court. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (citation omitted)).

restrictive or reversionary clauses, but instead has expansive granting clauses, granting all right, interest and title suggests that the grantor intended to grant title to the grantee. See Rogers v. United States, 107 Fed. Cl.  at 395-96 (Under Florida law, it "could not be clearer" that the deeds at issue conveyed title when they stated that "the parties . . . hereby grant, bargain, sell and convey unto the party of the second part, all their right, title and interest, of any nature whatsoever, in and to the following property . . ." and when they did not contain "any language that limits or restricts the interests conveyed."); Whispell Foreign Cars, Inc. v. United States, 97 Fed. Cl. at 335 (Under Florida law, a deed purporting to "[g]rant, bargain, sell and convey" to the railroad  a piece of land, and which also "did not contain any language—express or limited—limiting the use or purpose to which the land is to be put," conveyed interest in fee simple, rather than easement.).

The government attached to its cross-motion for summary judgment the 1923 warranty deed between G.F. and Mary J. Holman and the Florida East Coast Railway, in which the Holmans conveyed a strip of land to the Florida East Coast Railway. Plaintiffs do not take issue with the language of the 1923 warranty deed attached by defendant to its cross-motion for partial summary judgment in Castillo. As previously noted, plaintiffs' aerial map attached to their cross-motion for partial summary judgment in Castillo displays the railroad corridor, the location of the portion of the railroad the corridor the Florida East Coast Railway obtained through the Holman deed in 1923, the location of the four rights-of-way the Florida East Coast Railway obtained through condemnation in 1924, and the location of all of the Castillo plaintiffs' parcels. According to the Castillo plaintiffs' aerial map, the strip of land which resulted from the Holman conveyance runs north to south and is located on the western side of the railroad corridor. The strip of land resulting from the Holman conveyance is separated from the properties belonging to the following nine Castillo plaintiffs by the strip of land underlying the Russo right-of-way: (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez. Thus, the strip of land underlying the Russo right-of-way, as depicted on plaintiffs' aerial map, is wedged in between the land resulting from the Holman conveyance and the parcels of land for these nine Castillo plaintiffs.

As discussed below, based on the plain language of the Holman deed, the Holmans granted fee simple title to the Florida East Coast Railway in the strip of land underlying the railroad corridor. The Holman deed states that on July 20, 1923,

GF Holman and Mary J Holman, his wife . . . parties of the first part, and FLORIDA EAST COAST RAILWAY COMPANY, . . . party of the second part, WITNESSETH, that the said parties of the first part, for and in consideration of the sum of ($3,000.00) *******THREE THOUSAND********* Dollars, . . . . granted, bargained, and sold to the said party of the second part, its successors and assigns forever, the following described land, to wit: A piece or parcel of land situated in the South-west Quarter (SW ¼) of the South-east Quarter (SE ¼) of Section Two (2) of Township Fifty-four (54)

South, in Range Forty (40) East, in Dade County, Florida, bounded and described as follows:

. . .

1320 feet more or less, to lands now or formerly of W. W. Goucher, thence Westerly along Goucher's lands 76 feet, thence South 1320 feet more or less to the South line of said Section Two (2) at a point 100 feet West of the point of beginning, thence Easterly 100 feet to the point or place of beginning. Containing 2.72 acres more or less.

(capitalization in original).

The Holman deed includes an expansive granting clause, stating that the Holmans "granted, bargained, and sold to" the Florida East Coast Railway and "its successors and assigns forever," the strip of land that comprised the Holman conveyance, which indicates that the Holmans intended to grant the Florida East Coast Railway fee simple title. The Holman deed also does not place any use restrictions on the Florida East Coast Railway's use of the land so as to suggest that the Holmans intended to grant a lesser interest than fee simple title to the Florida East Coast Railway. For example, the Holman deed does not state that the land conveyed was to be specifically used as a railroad "right of way," as did the four final judgments entered in favor of the Florida East Coast Railway in 1924 by the Dade County Circuit Court and which the plaintiffs and defendant agree conveyed only an easement to the Florida East Coast Railway in their Joint Stipulations Regarding Title filed in the above-captioned cases. Moreover, although the nine Castillo plaintiffs initially "[d]isputed" the interest obtained by the Florida East Coast Railway through the Holman deed in the parties' Joint Stipulations Regarding Title, the nine Castillo plaintiffs do not address in their cross-motion for partial summary judgment what the Holman deed conveyed to the Florida East Coast Railway in 1923, nor have the nine Castillo plaintiffs presented any evidence contrary to a fee simple conclusion. This court, therefore, finds that in 1923, G.F. and Mary J. Holman conveyed fee simple title to the Florida East Coast Railway, and the nine Castillo plaintiffs, (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez, have no cognizable property interest in the strip of land conveyed in the Holman deed. As the adjoining nine Castillo plaintiffs never possessed a property interest in the subject corridor conveyed in the Holman deed, no taking has occurred as to that portion of the railroad corridor. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." (citing Maritrans Inc. v. United States, 342 F.3d at 1352)). Because the Florida East Coast Railway acquired fee simple title in the strip land conveyed to it in the 1923 Holman deed, the court grants the government's cross-motion for partial summary judgment in Castillo as to the following nine Castillo plaintiffs' takings claims relating to the Holman deed: (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E.

and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez. Based on the record before the court, defendant has provided evidence that the Florida East Coast Railway, and not the nine Castillo plaintiffs, own the land underlying the Holman conveyance.

**The Parties' Cross-Motions for Partial Summary Judgment in Castillo and Menendez as to the Russo, Stanley, J. Pyles and J. Owens, and Johnson Rights-of-Way that the Florida East Coast Railway Obtained in the Four Condemnation Proceedings in 1924.**

The Castillo and Menendez plaintiffs have moved for partial summary judgment as to the issue of takings liability for the Russo, Stanley, J. Pyles and J. Owens, and Johnson rights-of-way, the portions of the railroad corridor the Florida East Coast Railway obtained through condemnation, so that, if liability is found, the matter can proceed to the valuation stage to determine the just compensation due to each plaintiff. As indicated above, both of these sets of Castillo and Menendez plaintiffs are not moving for summary judgment as to the portion of the railroad line the Florida East Coast Railway obtained through the Holman deed. The Castillo and Menendez plaintiffs make identical arguments regarding the sections of the railroad corridor obtained by condemnation in their cross-motions for partial summary judgment.

The Castillo and Menendez plaintiffs argue in their cross-motions for partial summary judgment that the STB's "invocation of section 8(d) [of the National Trails Systems Act, codified at 16 U.S.C. § 1241, et seq.] took these Florida owners' property for which the Just Compensation Clause requires the government to justly compensate these owners." The Castillo and Menendez plaintiffs then argue in their cross-motions for partial summary judgment that the "railroad only had an easement to use these owners' [plaintiffs'] land for operation of a railway," and that the "scope of the easement granted the railroad was limited to use the [plaintiffs'] property for operation of a railway and, when the strip of land was no longer used for operation of a railway, these owners [plaintiffs] enjoyed unencumbered title and exclusive possession of the land." The Castillo and Menendez plaintiffs also assert in their cross-motions for partial summary judgment that they "own the fee estate underlying" the railroad corridor, but do not attach any supporting evidence to their cross-motions indicating that they own the land underlying the railroad corridor.

The Castillo and Menendez plaintiffs in their respective replies in support of their cross-motions for partial summary judgment argue, for the first time, that there is a "Center-line Presumption" that as landowners "whose property borders the abandoned right-of-way," plaintiffs own "up to the center line of the right-of-way." In particular, both sets of plaintiffs state in their replies in support of their cross-motions:

The issue really is really quite simple. All plaintiffs listed on Table A [which the Castillo and Menendez plaintiffs attached to their motions for partial summary judgment] own parcels of land adjacent to the abandoned railroad easement originally acquired by condemnation. All agree the extent of the

railroad's interest was a right-of-way easement for the operation of a railway
line. In other words, no on [sic] claims the railroad owned the fee estate in
the strip of land across which the railroad operated its railway line.

Each landowner whose property borders the abandoned right-of-way is
presumed by Florida law to own the land underlying the right-of-way, up to
the center line of the right-of-way.

The government responds in its cross-motion for partial summary judgment in
Castillo that the plaintiffs "have failed to prove that they are the fee owners of some or all
of the portions of the railroad corridor acquired by condemnation." The government also
argues in Castillo that the plaintiffs' "attempt to rely on the so-called centerline
presumption to support their claim," is rebutted by evidence before the court. The
government argues that the "legal descriptions for the subdivision plats exclude the
railroad right-of-way as part of the land owned by the subdivision developers." According
to the government, "if the subdivision developer as the predecessor-in-interest to Plaintiffs
did not own any portion of the railroad corridor as presented by their plats, then Plaintiffs
cannot be the current owner of this land" underlying the railroad corridor. The government
then argues that because "Plaintiffs have no evidence of their ownership of the underlying
railroad corridor," the Castillo plaintiffs' cross-motion for partial summary "should fail."
Additionally, the government argues that the Castillo plaintiffs' interests to the railroad
corridor, if any, should be limited to the actual width of the applicable right-of-way that
runs adjacent to plaintiffs' parcels. As previously noted, the Stanley right-of-way is
separate from plaintiffs' parcels. In particular, wedged in between the Stanley right-of-way
and the parcels belonging to six Castillo plaintiffs and one Menendez plaintiff is the
Johnson right-of-way. The six Castillo plaintiffs are (1) Luis Crespo, (2) Jose Luis and
Grace Barsello Napole, (3) Bernardo D. and Norma A. Manduley, (4) Danilo A. and Dora
Rodriguez, (5) Avimael and Odalys Arevalo, and (6) Dalia Espinosa, Daniel Espinosa,
and Sofira Gonzalez. The Menendez plaintiff is Luis Schmidt. Also as previously noted,
wedged in between the northern portion of the Stanley right-of-way and the parcels of
land belonging to the two Castillo plaintiffs (1) Jose F. and Dora A. Dumenigo and (2)
Humberto J. and Josefa Marcia Diaz and two Menendez plaintiffs (1) Jose Martin
Martinez and Norma del Socorro Gomez and (2) Nelson Menendez and Osvaldo Borras,
Jr. is the southern portion of the J. Pyles and J. Owens right-of-way. Thus, the government
argues that the Castillo plaintiffs cannot possibly own to the center of railroad corridor
because none of the rights-of-way which are adjacent to the plaintiffs' parcels uniformly
span 50 feet, which is half of the railroad corridor.

Similarly, in Menendez, the government argues in its cross-motion for partial
summary judgment that the "plaintiffs cannot prove that they are the owners of portions
of the railroad corridor acquired by condemnation" and, in fact, that the plat language of
the Princess Park Manor plat "establishes that the predecessors in interest to Plaintiffs
did not own the corridor land, so Plaintiffs do not own that land" underlying the railroad
corridor. Thus, defendant argues in Menendez that the court should "grant the United
States' cross-motion for summary judgment on Plaintiffs' claims." The only remaining
issue, therefore, before for the court is whether there are any genuine issues of material

fact in dispute as to whether the <u>Castillo</u> and <u>Menendez</u> plaintiffs are owners of the land underlying the Russo, Stanley, J. Pyles and J. Owens, and Johnson rights-of-way, which the Florida East Coast Railway obtained through the four separate condemnation proceedings in the Dade County Circuit Court in 1924.  As previously noted, the court found that the Florida East Coast Railway held fee simple title in the land underlying the Holman conveyance, which the Florida East Coast Railway obtained through a warranty deed in 1923. Moreover, because the Florida East Coast Railway holds fee simple title in the land underlying the Holman conveyance, none of the plaintiffs in the above-captioned cases are entitled to a presumption of ownership that they own to the center line of the railroad corridor for land obtained through the Holman conveyance. <u>See</u> <u>Rogers v. United States</u>, 184 So. 3d at 1098.

Under Florida law, any presumption of ownership to the center line of a right-of-way can be rebutted by evidence that the party asserting the presumption does not own any of the land at issue. <u>See</u> <u>id.</u> Both the <u>Castillo</u> and <u>Menendez</u> plaintiffs in their reply briefs in support of their cross-motions for partial summary judgment, cite to <u>Smith v. Horn</u>, 70 So. 435 (Fla. 1915) for the proposition that Florida courts should apply the "Center-line Presumption" in these cases. In <u>Smith v. Horn</u>, the Supreme Court of Florida presumed that an owner of a parcel of land that was adjacent to a street within a subdivision owned to the center of a street because there was no "contrary showing" that the original subdivision owner or his grantees clearly reserved title to the street. <u>See</u> <u>id.</u> at 436. The Supreme Court of Florida explained that:

> Where the owner of land has it surveyed, mapped, and platted, showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, the title to the land under the street remaining in the owner or his grantees; and, where such conveyances are made with reference to the map or plat, the dedication of the easement for street purposes cannot be subsequently revoked as against the grantees, and the title of the grantees of subdivisions abutting on such streets, in the absence of a contrary showing, extends to the center of such highway, subject to the public easement. And, where the highway is lawfully surrendered, the then holder of the title to abutting property and to the center of the street has the property relieved of the public easement.

<u>Id.</u>

"[T]he rule applied in [<u>Smith v.</u>]<u>Horn</u> . . . is a rule of construction that is employed to aid in determining the grantor's intent" as to whether the grantor intended to retain title to the land underlying the easement or pass title to his grantees. <u>Rogers v. United States</u>, 184 So. 3d at 1098; <u>see also</u> <u>Servando Building Co. v. Zimmerman</u>, 91 So. 2d 289 (Fla. 1956); <u>Peninsular Point, Inc. v. South Georgia Dairy Co-op</u>, 251 So. 2d 690 (Fla. Dist. Ct.

App. 1971). The rule "seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve his interest in the street when he had parted with his title to the adjoining land." Florida Southern Ry. v. Brown, 1 So. 512, 513-514 (1887). This presumption is a "rule . . . for construing conveyances, and must be applied to carry out, and not to frustrate the intention of the parties." Smith v. Horn, 70 So. at 436. The center line presumption, as articulated in Smith v. Horn, however, can be rebutted in certain circumstances. The Castillo and Menendez plaintiffs assert in their replies in support of their cross-motions for partial summary that the center line presumption is only rebutted when the government has provided "explicit evidence in the form of a recorded deed by which the predecessor-in-title to these landowners explicitly retained title to the land under the railroad right-of-way." (citing to Rogers v. United States, 184 So. 3d at 1098).

In Rogers v. United States, the Supreme Court of Florida analyzed a question of Florida law certified to the Supreme Court of Florida by the United States Court of Appeals for the Federal Circuit. See Rogers v. United States, 184 So. 3d at 1089. The certified question posed by the United States Court of Appeals for the Federal Circuit arose from a rails-to-trails case before the United States Court of Federal Claims involving "the claims of a group of owners of land abutting the railroad corridor who claim that conveyances to the railroad by their predecessors in title granted only easements for a railroad right-of-way and did not convey fee simple title . . . ." Id. at 1091. The United States Court of Appeals for the Federal Circuit stated the question that was certified as follows:

> Assuming that a deed, on its face, conveys a strip of land in fee simple from a private party to a railroad corporation in exchange for stated consideration, does Fla. Stat. § 2241 (1892) (recodified at Fla. Stat. § 4354 (1920); Fla. Stat. § 6316 (1927); Fla. Stat. § 360.01 (1941)), state policy, or factual considerations—such as whether the railroad surveys property, or lays track and begins to operate trains prior to the conveyance of a deed—limit the railroad's interest in the property, regardless of the language of the deed? .

Id. at 1090 (alterations in original; footnote omitted). In a footnote, the Federal Circuit indicated that "[w]hile the Appellants dispute whether the deeds appear on their face to transfer a fee simple interest in the properties at issue, like the Court of Federal Claims before us, we conclude that they do." Id. at 1090 n.1. The Supreme Court of Florida responded:

> Considering the alternatives included in the Court of Appeals' certified question, we see that there are actually three questions: (1) Does section 2241, Revised Statutes of Florida (1892), limit the railroad's interest in the property, regardless of the language of the deeds? (2) Does state policy limit the railroad's interest in the property, regardless of the language of the deeds? (3) Do factual considerations, such as whether the railroad surveys land or lays track and begins running trains before the conveyance of a deed, limit the railroad's interest in the property, regardless of the language

of the deeds? Under the circumstances found to exist by the Court of Federal Claims, we answer all three questions in the negative.

Id. at 1090.

In analyzing the deeds at issue in the certified question in Rogers v. United States, the Supreme Court of Florida concluded that "the deeds were clear in their language and conveyed fee simple title." Id. at 1097. When determining whether Florida State policy limited a railroad's interest in the property acquired by deed, regardless of the language of the deeds, the Supreme Court of Florida stated:

> Appellants also cite certain decisions of this Court in support of their "strips and gores"[11] argument. In Seaboard Air Line Ry. v. Southern Investment Co., 53 Fla. 832, 44 So. 351 (1907), and Florida Southern Ry. v. Brown, 23 Fla. 104, 1 So. 512 (1887), this Court recognized that when a street or highway is the boundary of a lot or piece of land, the owner of the lot owns to the center of the street or highway, subject to the right of the public to use the public street or highway. "The rule seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve his interest in the street when he had parted with his title to the adjoining land." Id. at 513-14. In Smith v. Horn, 70 Fla. 484, 70 So. 435 (1915), a subdivision plat was mapped out showing blocks and lots with spaces for streets running in between them. The plat showed the owner's intent to create public easements for the streets. The purchasers of the lots were presumed to have received title to the land extending to the center of the street abutting their lots. Upon the subsequent abandonment or surrender of a street easement, the abutting owners owned the property to the center of the street free of the easement. Id. at 436–37. This outcome was based on the presumed intent of the grantor in the absence of a contrary showing. Servando Bldg. Co. v. Zimmerman, 91 So.2d 289 (Fla.1956), recognized that the rule applied in Horn, Southern Investment, and Brown is a rule of construction that is employed to aid in determining the grantor's intent. Under this body of caselaw, a conveyance of a lot bordered by a street is presumed to carry title to the center of the street. This rule of construction does not apply if a contrary intention is made clear by the language of the deed. To the same effect is the decision in United States v. 16.33 Acres of Land, 342 So.2d 476 (Fla.1977). The presumption is also inapplicable if the strip of land being claimed is titled in someone else. See Paine, 71 F. at 629.

---

[11] The Supreme Court of Florida stated that the "strips and gores" doctrine, cited by appellants in Rogers v. United States, "has been explained as follows: 'The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple.'" Rogers v. United States, 184 So. 3d at 1097-98 (quoting Penn Central Corp. v. U.S. R.R. Vest Corp., 955 F.2d 1158, 1160 (7th Cir. 1992)).

Rogers v. United States, 184 So. 3d at 1098. The Supreme Court of Florida indicated that "[t]hese cases on subdivision plat maps are distinguishable" because the deeds at issue in Rogers v. United States "were clear as to the title conveyed," which was fee simple, and "the presumption that an owner of a lot abutting a street owns to the center of the street will not prevail over clear language in a deed showing contrary intent." Id. at 1099. In a footnote, the Supreme Court of Florida stated "[w]e need not discuss whether or to what extent this 'center line presumption' rule still applies to property adjacent to streets and highways in Florida today. We hold that it has no application in this case." Id. at 1099 n.7. After the Supreme Court of Florida answered the certified question, the United States Court of Appeals issued an opinion stating that the "presumption that owners of parcels of land that are bounded by adjacent public roadways or railways own all the land to the center of the strip, rather than to just the edge of the strip" did not apply because there was a contrary intent in the language of the deeds at issue in Rogers. See Rogers v. United States, 814 F.3d at 1309 (quoting appellant's brief in Rogers).

Although the Supreme Court of Florida in Rogers recognized that "the language of a deed" indicating that the grantor intended to reserve title to the land underlying the easement at issue could rebut a presumption of ownership, the Supreme Court of Florida did not hold, as asserted by plaintiffs, that a deed in which the grantor reserved title to land underlying the easement was the only form of evidence which could rebut a presumption of ownership. See Rogers v. United States, 184 So. 3d at 1098. The Supreme Court of Florida in Rogers more broadly stated that an alleged presumption of ownership asserted by a landowner of a parcel of land adjacent to the easement at issue is "inapplicable if the strip of land being claimed is titled in someone else." Id. Further, as the Supreme Court of Florida announced over one hundred years ago, "a description bounding land by a highway conveys [title] to the center of the highway, but it is asserted, on the principle of non dat qui non habet,[12] and very properly, that it does so only where the grantor himself has the title." Jacksonville, T. & K.W. Ry. Co. v. Lockwood, 15 So. 327, 328–29 (Fla. 1894) (internal citations omitted). The Supreme Court of Florida in Smith v. Horn similarly indicated that a presumption of ownership applies if the grantor had title to the land underlying the easement to begin with by stating that, "unless the deed manifests an intention on the part of the grantor to limit the boundary line, the line, when the land is bounded by a nonnavigable stream or highway, extends to the center of such stream or highway, if the grantor is the owner of the fee." Smith v. Horn, 70 So. at 436 (internal citation omitted). In Smith v. Horn, the Supreme Court of Florida also stated that if the grantor did not clearly reserve title to the land underlying the street at issue, then, title to the center of the street passed to the adjoining landowner. See id. at 437. It was understood, however, by the parties in Smith v. Horn, that the grantor at issue actually owned the disputed piece of land underlying the street easement. In particular, the parties stipulated that the original subdivision owner, who platted the street at issue,

---

[12] "Non dat qui non habet" is a legal phrase for "[y]ou can't give what haven't got." J. Stanley Mcguade, Ancient Legal Maxims and Modern Human Rights, 18 CAMPBELL L. REV. 75, 120 (1996).

had title to the land underlying the street. See id. at 435. What the parties disputed in Smith v. Horn was whether the grantor intended to pass title to the land underlying the street to the adjacent landowner or reserve title to himself. See id. at 436-37. Thus, under Florida law, the center line presumption can be rebutted, for example, by evidence that the grantor did not own the land underlying the easement at issue, or, if there was ownership of such land, evidence that the grantor clearly reserved title to the land, such that the adjoining landowner would have no interest in the easement.

**Zena Gardens Subdivision Plat**

Based on the record before the court, the following nine Castillo plaintiffs own discrete parcels of land in the Zena Gardens subdivision: (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez. Further, each of these nine Castillo plaintiffs took title to their discrete parcel of land with reference to the Zena Gardens subdivision plat. Under Florida law, when a party takes title by reference to a "recorded plat," "all restrictions, easements, and reserved rights that appear on the plat are incorporated in the instruments of conveyance as if though the same had been recited in the instruments." Peninsular Point, Inc. v. South Georgia Dairy Co-op, 251 So. 2d at 693; see also McCorquodale v. Keyton, 63 So. 2d 906, 910 (Fla. 1953); Miami-Dade County v. Torbert, 69 So. 3d 970, 973 (Fla. Dist. App. Ct. 2011) ("If a landowner plats or subdivides his land into lots or blocks, lays off streets and other public ways, designates portions of the land [as] parks, playgrounds, and similar facilities and then conveys lots with reference to the plat, he is bound by the plat and representations he has made."). Thus, the representations made in the Zena Gardens plat are applied to the Castillo plaintiffs as if incorporated in plaintiffs' respective deeds.

The nine Castillo plaintiffs assume throughout their reply in support of their cross-motion for partial summary judgment that the original Zena Gardens subdivision owners owned the land underlying the railroad corridor, which borders the western side of the Zena Gardens subdivision, and did not intend to reserve title to the land underlying the railroad corridor. Plaintiffs state that "[t]he grantor who subdivided the larger tract of land and recorded the . . . Zena Gardens plat[] [Louis and Rebecca Merwitzer] which designate the individual lots adjoining the railroad right-of [sic] way did not intent [sic] to reserve title to the land under the railroad right-of-way."

Pursuant to Florida law, a plat "shall show a description of the lands subdivided, and the description shall be the same in the title certification. The description must be so complete that from it, without reference to the plat, the starting point and boundary can be determined." FLA. STAT. § 177.091 (2017). Further, under Florida law, when construing a subdivision plat:

The plat must be construed as a whole and every part of the instrument be given effect. Too, the plat should be construed fairly and reasonably with no

part rejected as superfluous. Finally, if the plat is ambiguous, the construction must be against the dedicator and in favor of the public.

N. Lauderdale Corp. v. Lyons, 156 So. 2d 690, 692 (Fla. Dist. Ct. App. 1963); see also Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 132 (Fla. 2000) ("It is axiomatic that when construing a document, courts should give effect to the plain meaning of its terms.").

The Zena Gardens plat states that Louis and Rebecca Merwitzer are

owners of the S.E. ¼ of the S.E. ¼ of Section 2, Township 54 South, Range 40 East, Miami Dade County, Florida, excepting therefrom a strip of land off the westerly side [of the Zena Gardens subdivision] which is the right of way of the Okeechobee-Miami Extension of the Florida East Coast Railway, have caused to be made the attached plat entitled future planting, trees and shrubbery there on are hereby dedicated to the perpetual use of the Public for proper purposes reserving to the said Louis Merwitzer and Rebecca Merwitzer, his wife, their heirs, successors or assigns, the reversion or reversions thereof whenever discontinued by law.

(emphasis added). The plat makes a specific point to "except[]" the railroad corridor from the description of land platted in the Zena Gardens subdivision, which is the same platted subdivision that includes the nine parcels which were each transferred to the nine Castillo plaintiffs. Thus, based on the language of the plat, the railroad corridor is not included in the Zena Gardens subdivision. Furthermore, as depicted on the Zena Gardens plat, none of the parcels belonging to the nine Castillo plaintiffs extend onto the railroad corridor but, instead, end at the edge of the railroad corridor. Additionally, there is another paragraph in the plat in which the Merwitzers dedicate various areas of their subdivision to public use. Notably, this paragraph does not reference the railroad corridor. According to Florida law:

Every plat of a subdivision filed for record must contain a dedication by the owner or owners of record. The dedication must be executed by all persons, corporations, or entities whose signature would be required to convey record fee simple title to the lands being dedicated in the same manner in which deeds are required to be executed. All mortgagees having a record interest in the lands subdivided shall execute, in the same manner in which deeds are required to be executed, either the dedication contained on the plat or a separate instrument joining in and ratifying the plat and all dedications and reservations thereon.

FLA. STAT. § 177.081 (2017).

The Zena Gardens' dedication states:

The Streets, Avenues and Terrace as shown together with all existing and

future planting, trees and shrubbery there on are hereby dedicated to the perpetual use of the Public for proper purposes reserving to the said Louis Merwitzer and Rebecca Merwitzer, his wife, their heirs, successors or assigns, the reversion or reversions thereof whenever discontinued by law.

The Merwitzers explicitly dedicate various areas of their subdivision, which are generally used for transportation, such as "Streets" and "Avenues," for public use. The Merwitzers, however, do not mention the railroad corridor, which based on the record before the court was in use by the Florida East Coast Railway at the time the plat was created. Thus, the absence of the railroad corridor in the plat's dedication confirms that the railroad corridor was not intended to be considered part of the subdivision properties which were eventually transferred to the nine Castillo plaintiffs.

Because the original Zena Gardens subdivision owners did not include the railroad corridor as part of their platted subdivision, the Zena Gardens subdivision owners did not intend to pass title to the railroad corridor to the grantees of the subdivision parcels adjacent to the railroad corridor. Thus, any potential presumption that the following nine Castillo plaintiffs, (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co-Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez, who own discrete parcels in Zena Gardens, own to the center of the railroad corridor is rebutted. Furthermore, because the Zena Gardens plat did not include the railroad corridor, the nine Castillo plaintiffs' parcels do not include any of the land underlying the railroad corridor. Without a cognizable interest in the railroad corridor, the nine Castillo plaintiffs' takings claim as to the portion of the railroad corridor obtained through the four condemnation proceedings in 1924 by the Florida East Coast Railway fails. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." (citing Maritrans Inc. v. United States, 342 F.3d at 1352)).

**Princess Park Manor Subdivision Plat**

The record before the court indicates that the other ten Castillo plaintiffs, not included in the Zena Gardens plat, (1) Luis Crespo, (2) Jose Luis and Grace Barsello Napole, (3) Bernardo D. and Norma A. Manduley, (4) Danilo A. and Dora Rodriguez, (5) Avimael and Odalys Arevalo, (6) Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez, (7) Humberto J. and Josefa Marcia Diaz, (8) Jose F. and Dora A. Dumenigo, (9) Shops on Flagler Inc., and (10) Gonzalo Padron Marino, Julia Garcia and Mayda Rotella, and the three Menendez plaintiffs, (1) Luis Schmidt, (2) Jose Martin Martinez and Norma del Socorro Gomez, and (3) Nelson Menendez and Osvaldo Borras, Jr. each own a discrete parcel of land in the Princess Park Manor subdivision and took title to their discrete parcel of land in reference to the Princess Park Manor plat. Thus, any representations contained within the Princess Park Manor plat are applied to the ten Castillo and three Menendez plaintiffs as if they were contained in these plaintiffs' respective deeds. See Peninsular Point, Inc. v. South Georgia Dairy Co-op, 251 So. 2d at 693; see also McCorquodale v.

Keyton, 63 So. 2d 906, 910 (Fla. 1953); Miami-Dade Cnty. v. Torbert, 69 So. 3d 970, 973 (Fla. Dist. App. Ct. 2011).

The ten Castillo plaintiffs and three Menendez plaintiffs assume throughout their replies in support of their cross-motions for partial summary judgment, without any supporting evidence, that the original subdivision owners for the Princess Park Manor subdivision owned the land underlying the railroad corridor and did not intend to reserve title to the land underlying the railroad corridor, which borders the western side of the Princess Park Manor subdivision. In particular, the ten Castillo plaintiffs state in their reply in support of their cross-motion for partial summary judgment in that "[t]he grantor who subdivided the larger tract of land and recorded the Princess Park . . . plat[] [Erving and Harriet Moss] which designate the individual lots adjoining the railroad right-of [sic] way did not intent [sic] to reserve title to the land under the railroad right-of-way." The three Menendez plaintiffs also similarly state in their reply in support of their cross-motion for partial summary judgment that "[t]he grantor who subdivided the larger tract of land [Erving and Harriett Moss] and recorded the Princess Park plat which designates the individual lots adjoining the railroad right-of-way did not intend to reserve title to the land under the railroad right-of-way."

As previously noted, a "plat must be construed as a whole and every part of the instrument be given effect," and "should be construed fairly and reasonably with no part rejected as superfluous." N. Lauderdale Corp. v. Lyons, 156 So. 2d at 692; see also Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d at 132. The Princess Park Manor plat states that Erving and Harriett Moss are the

> owners of the South ½ of the N.E. 1/4s South of the Canal and East of the Florida East Coast Right-of-Way, located in Sec. 2 TWP.54 South, RGE. 40 East, Dade County, Florida; being the land East of the Florida East coast Right-of-Way and between Flagler Street and the Tamiami Canal and extending East to Ludlum Road, ALSO The West ½ of the Northeast ¼ of the Southeast ¼ less the Florida East Coast Right-of-Way all in Sec. 2 Township 54 South RGE.40 East, Dade County, Florida, said Florida East Coast Right-of-Way being the right-of-way of the Okeechobee Miami Extension of the Florida East Coast Railway, have caused to made the attached Plat entitled "PRINCESS PARK MANOR"

(all emphasis in original except emphasis on word "less" added). The plat makes a specific point to exclude the railroad corridor, at three different times, from the description of the land patted in the Princess Park Manor subdivision, which is the same platted subdivision that includes the thirteen parcels which were each transferred to the ten Castillo and three Menendez plaintiffs. First, the plat states that the Mosses are "owners of the South ½ of the N.E. ¼ s South of the Canal and East of the Florida East Coast Right-of-Way." It then states that the land owned by the Mosses is "located in Sec. 2TWP.54 South, RGE.40 East, Dade County Florida; being the land East of the Florida East Coast Right-of-Way." It then states that the Mosses own:

> The West ½ of the Northeast ¼ of the Southeast ¼ less the Florida East Coast Right-of-Way all in Sec. 2 Township 54 South RGE. 40 East, Dade County Florida, Said Florida East Coast Right-of-Way being the right-of-way of the Okeechobee Miami Extension of the Florida East Coast Railway.

(capitalization in original; emphasis added). Thus, based on the language of the plat, the railroad corridor is not included in the platted subdivision. Furthermore, as depicted on the Princess Park Manor plat, none of the parcels belonging to the ten Castillo and three Menendez plaintiffs extend onto the railroad corridor but, instead, end at the edge of the railroad corridor.

Additionally, the section of the Princess Park Manor plat in which the Mosses dedicate various platted streets and alleys to public use, does not mention the railroad corridor. In particular, the Princess Park Manor plat states that:

> The Streets, Avenues, Roads, Terraces, Courts and Alleys as shown together with all existing and future planning, trees and shrubbery thereon are hereby dedicated to the perpetual use of the public for proper purposes, reserving to the said ERVING A.MOSS and HARRIETT E.MOSS, his wife, their heirs; successors or assigns, the reversion or reversions thereof whenever discontinued by law.

(capitalization in original). The Mosses explicitly dedicate various areas of its subdivision which are generally used for transportation, such as "Streets," "Avenues," "Roads," and "Alleys," for public use. The Mosses, however, do not mention the railroad corridor, which based on the record before the court was in use by the Florida East Coast Railway at the time the plat was created. Thus, the absence of the railroad corridor in the plat's dedication confirms that the railroad corridor was not intended to be considered part of the subdivision properties which were eventually transferred to the ten Castillo and three Menendez plaintiffs.

Because the original Princess Park Manor subdivision owners did not include the railroad corridor as part of their platted subdivision, the Princess Park manor subdivision owners did not intend to pass title to the railroad corridor to the grantees of the subdivision parcels adjacent to the railroad corridor. Thus, any potential presumption that the following ten Castillo plaintiffs, (1) Luis Crespo, (2) Jose Luis and Grace Barsello Napole, (3) Bernardo D. and Norma A. Manduley, (4) Danilo A. and Dora Rodriguez, (5) Avimael and Odalys Arevalo, (6) Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez, (7) Humberto J. and Josefa Marcia Diaz, (8) Jose F. and Dora A. Dumenigo, (9) Shops on Flagler Inc., and (10) Gonzalo Padron Marino, Julia Garcia and Mayda Rotella, and three Menendez plaintiffs, (1) Luis Schmidt, (2) Jose Martin Martinez, and (3) Nelson Menendez and Osvaldo Borras, Jr., own to the center of the railroad corridor is rebutted. Furthermore, because the Princess Park Manor plat did not include the railroad corridor, the parcels belonging to these ten Castillo and three Menendez plaintiffs do not include any of the land underlying the railroad corridor. Without a cognizable interest in the railroad corridor, the ten Castillo and three Menendez plaintiffs' takings claim as to the

portion of the railroad corridor obtained through the four condemnation proceedings in 1924 fails. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372; Maritrans Inc. v. United States, 342 F.3d at 1352.

## CONCLUSION

Because the plaintiffs in Castillo and Menendez do not appear to own the land underlying the railroad corridor at issue, plaintiffs cannot prevail. The court **GRANTS** defendant's motion for summary judgment in Castillo, Case No. 16-1624, and Menendez, Case No. 17-1931. Castillo plaintiffs' cross-motion for partial summary is **DENIED**. Menendez plaintiffs' cross-motion for partial summary judgment is **DENIED**. The Clerk shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**