# In the United States Court of Federal Claims

No. 16-1624L; No. 17-1931L
Filed: October 30, 2018

| | |
|---|---|
| * * * * * * * * * * * * * *<br>*<br>**REINALDO CASTILLO, et al.,** *<br>*<br>Plaintiffs, *<br>v. *<br>*<br>**UNITED STATES,** *<br>*<br>Defendant. *<br>*<br>* * * * * * * * * * * * * *<br><br>**NELSON MENENDEZ, et al.,** *<br>*<br>Plaintiffs, *<br>v. *<br>*<br>**UNITED STATES,** *<br>*<br>Defendant. *<br>*<br>* * * * * * * * * * * * * * | **Motions for Reconsideration; Rails to Trails; Centerline Presumption; Florida State Law.** |

**Lindsay S.C. Brinton**, Arent Fox, LLP, Clayton, MO, for plaintiffs. With her were **Mark F. Hearne, II**, **Meghan S. Largent, Stephen S. Davis, Abram J. Pafford**, Arent Fox, LLP, Washington, D.C.

**Davené D. Walker**, Trial Attorney, Environment & Natural Resources Section, Department of Justice, Washington, D.C., for defendant. With her was **Jeffrey H. Wood**, Acting Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington, D.C.

**O P I N I O N**

**HORN, J.**

On June 29, 2018, this court issued its Opinion in Reinaldo Castillo, et al. v. United States, No. 16-1624L (Castillo),[1] and Nelson Menendez, et al. v. United States, No. 17-1931L (Menendez),[2] denying the Castillo and Menendez plaintiffs' cross-motions for summary judgment and granting defendant's cross-motions for summary judgment. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. 707, 742 (2018). The facts of the June 29, 2018 Opinion are incorporated into this Opinion with some of the most relevant facts repeated below. The Castillo and Menendez plaintiffs were landowners in Miami Dade County, Florida, who alleged that the United States government effected takings of their reversionary interests in a strip of land underlying a railroad line through the operation of the National Trails System Act, 16 U.S.C. § 1241 et seq. (2012). On July 2, 2018, the United States Court of Federal Claims Clerk's Office entered judgment in favor of defendant in both the Castillo and Menendez cases and both cases were dismissed. On July 30, 2018, the plaintiffs in both cases filed identical motions for reconsideration under Rule 59(a) and Rule 60(b) of the Rules of the United States Court of Federal Claims (RCFC) (2018) of the court's June 29, 2018 Opinion and July 2, 2018 judgments entered in Castillo and Menendez.

---

[1] The plaintiffs in Castillo were as follows: Gonzalo Padron Marino, Mayda Rotella and Julia Garcia, parcel number 01–4002–002–0220; Shops on Flager Inc., parcel number 01–4002–002–1780; Jose F. and Dora A. Dumenigo, parcel number 01–4002–002–1730; Humberto J. and Josefa Marcia Diaz, parcel number 01–4002–002–1720; Luis Crespo, parcel number 01–4002–002–1650; Jose Luis and Grace Barsello Napole, parcel number 01–4002–002–1640; Bernardo D. and Norma A. Manduley, parcel number 01–4002–002–1630; Danilo A. and Dora Rodriguez, parcel number 01–4002–002–1610; Avimael and Odalys Arevalo, parcel number 01–4002–002–1600; Dalia Espinosa, Daniel Espinosa and Sofira Gonzalez, parcel number 01–4002–002–1580; Lourdez Rodriguez, parcel number 01–4002–001–1370; Alberto Perez, parcel number 01–4002–001–1380; Mayra Lopez, parcel number 01–4002–001–1390; Niraldo Hernandez Padron and Mercedes Alina Falero, parcel number 01–4002–001–1400; Luisa Palencia and Xiomara Rodriguez, parcel number 01–4002–001–1410; Reinaldo F. Castillo, parcel number 01–4002–001–1430; Hugo E. and Concepcion V. Diaz as Co–Trustees of the Diaz Family Revocable Trust, parcel number 01–4002–001–1440; South American Tile, LLC, parcel number 01–4002–001–1450; and Gladys Hernandez, parcel number 01–4002–001–1460.

[2] The plaintiffs in Menendez were as follows: Jose Martin Martinez and Norma del Socorro Gomez, parcel number 01–4002–002–1710; Nelson Menendez and Osvaldo Borras, Jr., parcel number 01–4002–002–1690; and Luis R. Schmidt, parcel number 01–4002–002–1660.

**BACKGROUND**

In its June 29, 2018 Opinion, this court analyzed whether the Castillo and Menendez plaintiffs were entitled to summary judgment on their claims that defendant took their reversionary interests in a strip of land underlying a railroad line once operated by the Florida East Coast Railway (the railroad corridor) without just compensation. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 710-11. The Florida East Coast Railway acquired property interests in the railroad corridor over time through various conveyances, resulting in a railroad corridor "comprised of four unequally sized and separate rights-of-way and a strip of land resulting from a written deed, that when combined, span 100 feet wide." Id. at 711. The railroad corridor runs north to the south and sits directly west of discrete parcels of land belonging to the Castillo and Menendez plaintiffs. See id.

The parties in Castillo and Menendez disputed whether any of the plaintiffs owned the land underlying the railroad corridor. To ultimately succeed on their takings claims, as the moving parties, the Castillo and Menendez plaintiffs had the burden to establish that they had a cognizable property interest in the railroad corridor. See id. at 726 (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir.), reh'g en banc denied (Fed Cir. 2004), cert. denied, 545 U.S. 1139 (2005)). It was undisputed that the Castillo and Menendez plaintiffs are landowners who each own a parcel of land that is adjacent to the railroad corridor. It was also undisputed that majority of the railroad corridor at issue was an easement granted to the Florida East Coast Railway.[3] Defendant, however, attached to its motions for summary judgment in Castillo and Menendez the subdivision plats for the two subdivisions in which the Castillo and Menendez plaintiffs each owned a discrete parcel of land. Defendant argued that, based on the two subdivision plats, which excluded the land underlying the railroad corridor from the legal description of the subdivisions, the subdivision developers, who were the Castillo and Menendez plaintiffs' predecessors-in-interest, did not own any of the railroad corridor and, therefore, plaintiffs did not own any of the railroad corridor. The Castillo and Menendez plaintiffs argued that, because the subdivision plat maps did not sufficiently rebut a presumption under Florida State law that landowners adjacent to an easement own to the center of that easement, plaintiffs owned to the center of the railroad corridor. The Castillo and Menendez plaintiffs argued that because they owned to the center of the railroad corridor, they were entitled to summary judgment on this issue.

In its June 29, 2018 Opinion, this court noted that generally under Florida State law, there is a rebuttable presumption that a landowner who owns a discrete parcel of

---

[3] There was one portion of the railroad corridor that the Florida East Coast Railway obtained through a written deed from Mary and G.F. Holman in 1923. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 710. In its June 29, 2018 Opinion, this court found that the Florida East Coast Railway obtained title to this portion of the railroad corridor via the 1923 Holman deed, and, thus, none of the Castillo and Menendez plaintiffs had a property interest in this portion of the railroad corridor. See id. at 734. The Castillo and Menendez plaintiffs do not seek reconsideration of the court's June 29, 2018 holding as to the Holman deed.

3

land adjacent to an easement owns to the center of the easement. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 736. The court further discussed that a presumption of ownership based on the centerline presumption "can be rebutted, for example, by evidence that the grantor did not own the land underlying the easement at issue, or, if there was ownership of such land, evidence that the grantor clearly reserved title to the land, such that the adjoining landowner would have no interest in the easement." Id. at 738.

Regarding the takings claims for the nine Castillo plaintiffs who each own a parcel of land in the Zena Gardens subdivision, this court stated in its June 29, 2018 Opinion that

> these nine Castillo plaintiffs took title to their discrete parcel of land with reference to the Zena Gardens subdivision plat. Under Florida law, when a party takes title by reference to a "recorded plat," "all restrictions, easements, and reserved rights that appear on the plat are incorporated in the instruments of conveyance as if though the same had been recited in the instruments." Peninsular Point, Inc. v. South Georgia Dairy Co–op, 251 So. 2d [690, 693 (Fla. Dist. Ct. App. 1971)]; see also McCorquodale v. Keyton, 63 So. 2d 906, 910 (Fla. 1953); Miami–Dade County v. Torbert, 69 So. 3d 970, 973 (Fla. Dist. App. Ct. 2011) ("If a landowner plats or subdivides his land into lots or blocks, lays off streets and other public ways, designates portions of the land [as] parks, playgrounds, and similar facilities and then conveys lots with reference to the plat, he is bound by the plat and representations he has made."). Thus, the representations made in the Zena Gardens plat are applied to the Castillo plaintiffs as if incorporated in plaintiffs' respective deeds.

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 738-39. This court noted that the Zena Gardens plat states that Louis and Rebecca Merwitzer are

> owners of the S.E. ¼ of the S.E. ¼ of Section 2, Township 54 South, Range 40 East, Miami Dade County, Florida, <u>excepting therefrom a strip of land off the westerly side [of the Zena Gardens subdivision] which is the right of way of the Okeechobee–Miami Extension of the Florida East Coast Railway</u>, have caused to be made the attached plat entitled future planting, trees and shrubbery there on are hereby dedicated to the perpetual use of the Public for proper purposes reserving to the said Louis Merwitzer and Rebecca Merwitzer, his wife, their heirs, successors or assigns, the reversion or reversions thereof whenever discontinued by law.

Id. at 739-40 (emphasis in original). This court also stated that:

> The plat makes a specific point to "except[ ]" the railroad corridor from the description of land platted in the Zena Gardens subdivision, which is the same platted subdivision that includes the nine parcels which were each

4

transferred to the nine Castillo plaintiffs. Thus, based on the language of the plat, the railroad corridor is not included in the Zena Gardens subdivision. Furthermore, as depicted on the Zena Gardens plat, none of the parcels belonging to the nine Castillo plaintiffs extend onto the railroad corridor but, instead, end at the edge of the railroad corridor. Additionally, there is another paragraph in the plat in which the Merwitzers dedicate various areas of their subdivision to public use. Notably, this paragraph does not reference the railroad corridor. According to Florida State law:

> Every plat of a subdivision filed for record must contain a dedication by the owner or owners of record. The dedication must be executed by all persons, corporations, or entities whose signature would be required to convey record fee simple title to the lands being dedicated in the same manner in which deeds are required to be executed. All mortgagees having a record interest in the lands subdivided shall execute, in the same manner in which deeds are required to be executed, either the dedication contained on the plat or a separate instrument joining in and ratifying the plat and all dedications and reservations thereon.

FLA. STAT. § 177.081 (2017).

The Zena Gardens' dedication states:

> The Streets, Avenues and Terrace as shown together with all existing and future planting, trees and shrubbery there on are hereby dedicated to the perpetual use of the Public for proper purposes reserving to the said Louis Merwitzer and Rebecca Merwitzer, his wife, their heirs, successors or assigns, the reversion or reversions thereof whenever discontinued by law.

The Merwitzers explicitly dedicate various areas of their subdivision, which are generally used for transportation, such as "Streets" and "Avenues," for public use. The Merwitzers, however, do not mention the railroad corridor, which based on the record before the court was in use by the Florida East Coast Railway at the time the plat was created. Thus, the absence of the railroad corridor in the plat's dedication confirms that the railroad corridor was not intended to be considered part of the subdivision properties which were eventually transferred to the nine Castillo plaintiffs.

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 740. This court then concluded:

> Because the original Zena Gardens subdivision owners did not include the railroad corridor as part of their platted subdivision, the Zena Gardens

subdivision owners did not intend to pass title to the railroad corridor to the grantees of the subdivision parcels adjacent to the railroad corridor. Thus, any potential presumption that the following nine Castillo plaintiffs, (1) Lourdez Rodriguez, (2) Alberto Perez, (3) Mayra Lopez, (4) Niraldo Hernandez Padron and Mercedes Alina Falero, (5) Luisa Palencia and Xiomara Rodriguez, (6) Reinaldo F. Castillo, (7) Hugo E. and Concepcion V. Diaz as Co–Trustees of the Diaz Family Revocable Trust, (8) South American Tile, LLC, and (9) Gladys Hernandez, who own discrete parcels in Zena Gardens, own to the center of the railroad corridor is rebutted. Furthermore, because the Zena Gardens plat did not include the railroad corridor, the nine Castillo plaintiffs' parcels do not include any of the land underlying the railroad corridor. Without a cognizable interest in the railroad corridor, the nine Castillo plaintiffs' takings claim as to the portion of the railroad corridor obtained through the four condemnation proceedings in 1924 by the Florida East Coast Railway fails. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." (citing Maritrans Inc. v. United States, 342 F.3d [1344, 1352 (Fed. Cir. 2003)])).

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 740.

Regarding the takings claims for the ten Castillo and three Menendez plaintiffs, who each own a parcel of land in the Princess Park Manor subdivision, this court stated in its June 29, 2018 Opinion that each of these plaintiffs

own a discrete parcel of land in the Princess Park Manor subdivision and took title to their discrete parcel of land in reference to the Princess Park Manor plat. Thus, any representations contained within the Princess Park Manor plat are applied to the ten Castillo and three Menendez plaintiffs as if they were contained in these plaintiffs' respective deeds. See Peninsular Point, Inc. v. South Georgia Dairy Co–op, 251 So. 2d at 693; see also McCorquodale v. Keyton, 63 So. 2d 906, 910 (Fla. 1953); Miami–Dade Cnty. v. Torbert, 69 So. 3d 970, 973 (Fla. Dist. App. Ct. 2011).

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 740. The Princess Park Manor subdivision plat states that Erving and Harriett Moss are the

owners of the South ½ of the N.E. 1/4s South of the Canal and East of the Florida East Coast Right–of–Way, located in Sec. 2 TWP.54 South, RGE. 40 East, Dade County, Florida; being the land East of the Florida East coast Right–of–Way and between Flagler Street and the Tamiami Canal and extending East to Ludlum Road, ALSO The West ½ of the Northeast ¼ of the Southeast ¼ less the Florida East Coast Right–of–Way all in Sec. 2 Township 54 South RGE.40 East, Dade County, Florida, said Florida East Coast Right–of–Way being the right-of-way of the Okeechobee Miami

6

> Extension of the Florida East Coast Railway, have caused to [be] made the attached Plat entitled "PRINCESS PARK MANOR"

Id. at 741 (emphasis and capitalization in original). This court then reasoned:

> [B]ased on the language of the plat, the railroad corridor is not included in the platted subdivision. Furthermore, as depicted on the Princess Park Manor plat, none of the parcels belonging to the ten Castillo and three Menendez plaintiffs extend onto the railroad corridor but, instead, end at the edge of the railroad corridor.
>
> Additionally, the section of the Princess Park Manor plat in which the Mosses dedicate various platted streets and alleys to public use, does not mention the railroad corridor. In particular, the Princess Park Manor plat states that:
>
> > The Streets, Avenues, Roads, Terraces, Courts and Alleys as shown together with all existing and future planning, trees and shrubbery thereon are hereby dedicated to the perpetual use of the public for proper purposes, reserving to the said ERVING A.MOSS and HARRIETT E.MOSS, his wife, their heirs; successors or assigns, the reversion or reversions thereof whenever discontinued by law.
>
> (capitalization in original). The Mosses explicitly dedicate various areas of its subdivision which are generally used for transportation, such as "Streets," "Avenues," "Roads," and "Alleys," for public use. The Mosses, however, do not mention the railroad corridor, which based on the record before the court was in use by the Florida East Coast Railway at the time the plat was created. Thus, the absence of the railroad corridor in the plat's dedication confirms that the railroad corridor was not intended to be considered part of the subdivision properties which were eventually transferred to the ten Castillo and three Menendez plaintiffs.
>
> Because the original Princess Park Manor subdivision owners did not include the railroad corridor as part of their platted subdivision, the Princess Park manor subdivision owners did not intend to pass title to the railroad corridor to the grantees of the subdivision parcels adjacent to the railroad corridor. Thus, any potential presumption that the following ten Castillo plaintiffs, (1) Luis Crespo, (2) Jose Luis and Grace Barsello Napole, (3) Bernardo D. and Norma A. Manduley, (4) Danilo A. and Dora Rodriguez, (5) Avimael and Odalys Arevalo, (6) Dalia Espinosa, Daniel Espinosa, and Sofira Gonzalez, (7) Humberto J. and Josefa Marcia Diaz, (8) Jose F. and Dora A. Dumenigo, (9) Shops on Flagler Inc., and (10) Gonzalo Padron Marino, Julia Garcia and Mayda Rotella, and three Menendez plaintiffs, (1) Luis Schmidt, (2) Jose Martin Martinez, and (3) Nelson Menendez and

7

Osvaldo Borras, Jr., own to the center of the railroad corridor is rebutted. Furthermore, because the Princess Park Manor plat did not include the railroad corridor, the parcels belonging to these ten Castillo and three Menendez plaintiffs do not include any of the land underlying the railroad corridor. Without a cognizable interest in the railroad corridor, the ten Castillo and three Menendez plaintiffs' takings claim as to the portion of the railroad corridor obtained through the four condemnation proceedings in 1924 fails. See Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372; Maritrans Inc. v. United States, 342 F.3d at 1352.

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 741-42.

The Castillo and Menendez plaintiffs now seek reconsideration of the court's June 29, 2018 Opinion pursuant to RCFC 59(a) and of the court's July 2, 2018 judgments entered in Castillo and Menendez pursuant to RCFC 60(b). In their respective motions for reconsideration, the Castillo and Menendez plaintiffs challenge "whether this Court correctly applied Florida law and, specifically, whether this Court correctly applied the centerline presumption and the strips-and-gore doctrine[4] to the facts of this case." The

---

[4] As the Supreme Court of Florida in Rogers v. United States, 184 So. 3d 1087,1097-98 (2015) stated:

> [a]s applied to a railroad right of way, the "strips and gores" doctrine has been explained as follows:
>
> > The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple. Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased. If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor—that or the gradual extinction of the railroad's interest through the operation of adverse possession. It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service. A further consideration is that railroads and other right of way companies have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property—more, that is, than a right of way. But all this said, there is nothing to prohibit a farmer or other landowner from

8

Castillo and Menendez plaintiffs also argue in their motions for reconsideration that, "to the extent this Court believes 'there is a substantial ground for difference of opinion,'" on whether, under Florida State law, the "owners of these plats held title to the centerline of the land encumbered by the right-of-way easement," the plaintiffs ask "this Court to consider issuing an interlocutory order to the Federal Circuit with a request that the Federal Circuit certify this question to the Florida Supreme Court." The Castillo and Menendez plaintiffs do not seek reconsideration of this court's finding that the plaintiffs lacked a cognizable property interest in the portion of the railroad corridor conveyed to the Florida East Coast Railway, the operator of the railroad, by G.F. and Mary Holman through a warranty deed in 1923.

The Castillo and Menendez plaintiffs attached two declarations to their motions for reconsideration, which the plaintiffs had not previously submitted to the court when briefing their motions for summary judgment, which were decided in the court's June 29, 2018 Opinion. The first declaration is signed by Dale A. Whitman, a Professor Emeritus of Law at the University of Missouri, who notes in his declaration that the "focus of my teaching and research for the past 50 years has been property, real estate finance, and land use planning." The second declaration is signed by Christopher Smart, a Florida barred-attorney and "chair of The Real Property and Probated Trust Law Section of the Florida Bar's Title Issues and Standards Committee." The Castillo and Menendez plaintiffs also attached a copy of three sections of the 2012 Florida Uniform Title Standards to their motions for reconsideration, a copy of a deed dated January 16, 1950 between Erving and Harriett Moss and Princess Park Manor, Inc., a copy of a deed dated October 29, 1947 between Louis and Rebecca Merwitzer and Zena Gardens, Inc., and copies of what appear to be the same subdivision plats for Zena Gardens and Princess Park Manor that the government attached to its earlier cross-motions for summary judgment in Castillo and Menendez. As with the two declarations, the sections from the 2012 Florida Uniform Title Standards and the two deeds attached to the Castillo and Menendez motions for reconsideration were not previously submitted by the Castillo and Menendez plaintiffs when briefing their motions for summary judgment in the above-captioned cases.

Subsequent to filing their motions for reconsideration, on August 6, 2018, the Castillo and Menendez plaintiffs also filed identical notices of additional authority in support of their motions for reconsideration. Attached to the notices of additional authority is the chain-of-title for the parcel of land currently owned by Castillo plaintiff Reinaldo Castillo and the chain-of-title for the parcel of land currently owned by Menendez plaintiff Nelson Menendez. The plaintiffs, without explanation, did not attach to the notices of additional authority the chains-of-title for the parcels of land currently owned by the remaining eighteen Castillo plaintiffs and remaining two Menendez plaintiffs in the above-captioned cases.

---

selling outright to the railroad a strip of land for the railroad's tracks . . . .

Id. (quoting Penn Cent. Corp. v. U.S. R.R. Vest Corp., 955 F.2d 1158, 1160 (7th Cir. 1992)).

On August 15, 2018, defendant responded to the Castillo and Menendez plaintiffs' motions for reconsideration. Defendant argues that the motions for reconsideration should be denied because "the court's rejection of plaintiffs' legal arguments does not constitute 'manifest injustice' or 'clear error' warranting reconsideration." Defendant also argues that "plaintiffs' disagreement with the court's interpretation of the centerline presumption under Florida law does not provide a basis for their untimely request for certification to the Florida Supreme Court."

On August 20, 2018, the Castillo and Menendez plaintiffs filed replies in support of their motions for reconsideration, reiterating that the court misapplied the centerline presumption. The Castillo and Menendez plaintiffs also reiterate in their replies that if the court "has any doubt about the applicability of the centerline presumption," that the court "should certify this issue for interlocutory appeal and certification to the Florida Supreme Court."

**DISCUSSION**

Reconsideration of a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States Court of Appeals for the Federal Circuit has stated that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court. See Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.), reh'g denied (Fed. Cir. 1990); see also Carter v. United States, 207 Ct. Cl. 316, 318, 518 F.2d 1199, 1199 (1975), cert. denied, 423 U.S. 1076, reh'g denied, 424 U.S. 950 (1976); CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 531 (2017); Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. 345, 348 (2011) (discussing RCFC 59(a) and RCFC 60(b)); Oenga v. United States, 97 Fed. Cl. 80, 83 (2011) (discussing RCFC 59(a)); Webster v. United States, 92 Fed. Cl. 321, 324, recons. denied, 93 Fed. Cl. 676 (2010) (discussing RCFC 60(b)); Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 126, 129 (2009) (discussing RCFC 54(b) and 59(a)); Banks v. United States, 84 Fed. Cl. 288, 291-92 (2008) (discussing RCFC 54(b) and 59(a)); Corrigan v. United States, 70 Fed. Cl. 665, 667-68 (2006) (discussing RCFC 59(a)); Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 752 (2005); Keeton Corr., Inc. v. United States, 60 Fed. Cl. 251, 253 (2004) (discussing RCFC 59(a)); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003), aff'd, 120 F. App'x 817 (Fed. Cir.), cert. denied, 546 U.S. 844 (2005); Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002) (discussing RCFC 59(a)).

"Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)) (discussing RCFC 59(a)), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005); see also Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." (citing Marquip, Inc. v. Fosber Am., Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999), reh'g denied (Fed. Cir.

2000))); Provident Sav. Bank v. Popovich, 71 F.3d 696, 700 (7th Cir. 1995)); Oenga v. United States, 97 Fed. Cl. at 83; Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996) (discussing RCFC 59(a)), aff'd, 144 F.3d 769 (Fed. Cir. 1998). Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault . . . ." 12 JOSEPH T. MCLAUGHLIN AND THOMAS D. ROWE, JR., MOORE'S FEDERAL PRACTICE § 60.48[3][b] (3rd ed. 2008) (discussing RCFC 60(b)(6)); see also Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 393 (1993)) (discussing RCFC 60(b)(6)).

Courts must address reconsideration motions with "exceptional care." Carter v. United States, 207 Ct. Cl. at 318, 518 F.2d at 1199; see also Global Comput. Enters. v. United States, 88 Fed. Cl. 466, 468 (2009) (discussing RCFC 59(a)). "The three primary grounds that justify reconsideration are: '(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.'" Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010); see also Griffin v. United States, 96 Fed. Cl. 1, 7 (2010) (discussing RCFC 59(a)), mot. to amend denied, appeal dismissed, 454 F. App'x 899 (Fed. Cir. 2011); Totolo/King Joint Venture v. United States, 89 Fed. Cl. 442, 444 (2009) (quoting Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 499 (2007), aff'd in part, vacated in part, rev'd in part on other grounds, 583 F.3d 1344 (Fed. Cir. 2009)) (discussing RCFC 59(a)), appeal dismissed, 431 F. App'x 895 (Fed. Cir.), reh'g denied (2011); Dairyland Power Coop. v. United States, 90 Fed. Cl. 615, 652 (2009) (discussing RCFC 59(a)), recons. denied, No. 04-106C, 2010 WL 637793 (Fed. Cl. Feb. 22, 2010), aff'd in part, vacated in part on other grounds, 645 F.3d 1363 (Fed. Cir. June 24, 2011); Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citations omitted) (discussing RCFC 59); Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (discussing RCFC 59(a)), aff'd, 603 F.3d 1301 (Fed. Cir.), reh'g en banc denied (2010), cert. denied, 562 U.S. 1139 (2011). "Manifest," as in "manifest injustice," is "understood as clearly apparent or obvious." Cyios Corp. v. United States, 124 Fed. Cl. 107, 113 (2015) (internal quotation marks omitted); see also Lee v. United States, 130 Fed. Cl. 243, 252 (2017), aff'd, 895 F.3d 1363 (Fed. Cir. 2018); Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (discussing RCFC 59), aff'd, 384 F.3d 1368 (Fed. Cir. 2004), cert. denied, 544 U.S. 948 (2005). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" Griffin v. United States, 96 Fed. Cl. at 7 (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part, rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008)). "A court, therefore, will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the court.'" Ammex, Inc. v. United States, 52 Fed. Cl. at 557 (emphasis in original) (quoting Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993), aff'd, 50 F.3d 1021 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1995)); see also CanPro Invs. Ltd. v. United States, 131 Fed. Cl. at 531; Griffin v. United States, 96 Fed. Cl. at 7; Bowling v. United States, 93 Fed. Cl. 551, 562 (discussing RCFC

11

59(a) and 60(b)), recons. denied (2010); Webster v. United States, 92 Fed. Cl. at 324 (discussing RCFC 59(a) and 60(b)); Pinckney v. United States, 90 Fed. Cl. 550, 555 (2009); Tritek Techs., Inc. v. United States, 63 Fed. Cl. at 752. "A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court." Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. 469, 475 (2012) (internal quotations omitted; ellipse in original). "It is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier." Lee v. United States, 130 Fed. Cl. at 252; see also Cyios Corp. v. United States, 124 Fed. Cl. at 113 (rejecting protestor's argument raised for the first time in its motion for reconsideration); CANVS Corp. v. United States, 116 Fed. Cl. 294, 300 (2014) ("[A] party may not raise an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." (internal quotation marks and citation omitted)).

In sum, it is logical and well established that, "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard.'" Johnson v. United States, 127 Fed. Cl. 661, 664 (2016) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. at 594). "'Post-opinion motions to reconsider are not favored . . . especially where a party has had a fair opportunity to litigate the point in issue.'" Wagstaff v. United States, 118 Fed. Cl. 172, 175 (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994)), aff'd, 595 F. App'x 975 (Fed. Cir. 2014).

The Castillo and Menendez plaintiffs seek reconsideration of the court's June 29, 2018 Opinion pursuant to RCFC 59(a), and of the court's July 2, 2018 judgments entered in Castillo and Menendez pursuant to RCFC 60(b), on the ground that the court committed "clear error" resulting in "manifest injustice" when the court concluded that both sets of plaintiffs do not own any of the land underlying the railroad corridor.[5] The Castillo and Menendez plaintiffs specifically argue that the centerline presumption was not rebutted in the above-captioned cases because "[t]he government did not show that the Merwitzer and Moss families 'clearly reserved title' to the fee estate in the land under the railroad right-of-way." The Castillo and Menendez plaintiffs, however, have already argued in their reply briefs in support of their motions for summary judgment, filed prior to the court's June 29, 2018 Opinion, that the government had not demonstrated a "clear intent" by the Mosses and Merwitzers to reserve the land under the railroad corridor. In arriving at its June 29, 2018 Opinion, however, the court did not find the Castillo and Menendez plaintiffs' position persuasive. This court found that the government had sufficiently established that the Mosses and Merwitzers did not intend to pass title to their grantees to the land underlying the railroad corridor based on the exclusionary language in the subdivision plats, which the government had attached to its cross-motions for summary judgment in Castillo and Menendez. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 739, 742. In order to succeed on a motion for reconsideration, parties cannot simply reassert the same arguments they made in earlier proceedings. See Lee v. United States, 130 Fed. Cl. at 252. The Castillo and Menendez plaintiffs' recycled

---

[5] The Castillo and Menendez plaintiffs' motions for reconsideration do not differentiate regarding their arguments pursuant to RCFC 59(a) or to RCFC 60(b).

12

argument that the government failed to establish that the Mosses and Merwitzers clearly intended to reserve title to the railroad corridor does not justify reconsideration of the court's June 29, 2018 Opinion, pursuant to RCFC 59(a), or of the judgments entered in Castillo and Menendez on July 2, 2018, pursuant to RCFC 60(b).

The Castillo and Menendez plaintiffs then argue that the chains-of-title for plaintiff Reinaldo Castillo and plaintiff Nelson Menendez, which plaintiffs submitted to the court after the court issued its June 29, 2018 Opinion, "demonstrate that the Moss and Merwitzer families did not 'clearly reserve title' to the land under the railroad right-of-way easement." As an initial matter, the chains-of-title are public records and, therefore, were available to the Castillo and Menendez plaintiffs when they briefed the motions for summary judgment, which led to the June 29, 2018 Opinion, and should not have been left for a post-decision motion for reconsideration. As previously stated, "a motion for reconsideration should not be based on evidence that was readily available at the time the motion was heard." Johnson v. United States, 127 Fed. Cl. at 664 (internal quotation marks omitted). To the extent that the court would, however, considered the chains-of-title, the chains-of-title lend support to the court's June 29, 2018 conclusion that none of the plaintiffs in the above-captioned cases own the land underlying the railroad corridor. According to chains-of-title, Louis Merwitzer, predecessor-in-interest to the nine Castillo plaintiffs, each of whom own a discrete parcel of land in the Zena Gardens subdivision, never obtained title to the railroad corridor. In 1945, by written deed, Mr. Merwitzer obtained title to the land which now comprises the Zena Gardens subdivision, and, notably, the written deed excluded from the conveyance the "strip of land" underlying the railroad corridor bordering present day Zena Gardens. The 1945 deed described the land conveyed as the southeast quarter of the southeast quarter of Section 2, Township 54 South, Range 40 East:

**Less**

That certain strip of land off the Westerly portion of the above described property, more particularly described as follows: Said strip being bounded on the West by the West boundary line of above mentioned fractional part of said section, on the East by a line parallel to and 50 feet East of Center line of the Okeechobee-Miami Extension of the Florida East Coast Railway as surveyed, and located, and on the North and South by the respective boundary lines of said aforementioned fractional part of said Section, said strip being 25.33 feet wide at the North end and 1.2 Feet wide at the South end, containing in all 0.41 acres more or less

**and subject to**

That part off the Easterly portion and the Southerly portion of the a [sic] above described land that may have been dedicated previously for street or road purposes.

(emphasis added). Therefore, because Mr. Merwitzer did not receive title to the land underlying the railroad corridor, the nine Castillo plaintiffs, as successors-in-interest to Mr. Merwitzer, could not have received title to the land underlying the railroad corridor.

Similarly, Erving Moss, predecessor-in-interest to the ten Castillo plaintiffs and three Menendez plaintiffs, each of whom own a discrete parcel of land in the Princess Park Manor, never obtained title to the railroad corridor. In 1949, by written deed, Mr. Moss obtained title to the land which now comprises the Princess Park Manor subdivision. The 1949 deed did not include the land underlying the railroad corridor bordering present day Princess Park Manor. The 1949 deed noted that the land conveyed was "East of the Florida East Coast right-of-way" and also "[t]he West one-half of the Northeast quarter of the Southeast quarter less the Florida East Coast Right-of-Way. . . ." Thus, because Mr. Moss was not conveyed title to the railroad corridor, the ten Castillo and three Menendez plaintiffs could not have been conveyed title to the railroad corridor.

The Castillo and Menendez plaintiffs also argue that the court incorrectly interpreted the excepting language in the Zena Gardens and Princess Park Manor plats. The Castillo and Menendez plaintiffs argue that "[t]he description of the property conveyed in the Zena Garden [sic] and Princess Park Manor plats is rightly understood under Florida law and land title standards as a conveyance of the *entire* fee estate *subject to* the existing railroad easement." (emphasis in original). The Castillo and Menendez plaintiffs did not argue that the excepting language in the Zena Gardens and Princess Park Manor subdivision plats means that each subdivision is "subject to" the railroad right-of-way in their earlier filed motions for summary judgment and reply briefs which led to the June 29, 2018 Opinion of the court. As previously noted, "a party may not raise an issue for the first time on reconsideration when the issue was available to be litigated." CANVS Corp. v. United States, 116 Fed. Cl. at 300 (internal quotation marks omitted); see also Lee v. United States, 130 Fed. Cl. at 252. Thus, the Castillo and Menendez plaintiffs' newly raised arguments that the excepting language in the Zena Gardens and Princess Park Manor plats means that the subdivision is "subject to" the railroad right-of-way is not a basis for reconsideration of the court's June 29, 2018 Opinion, pursuant to RCFC 59(a), or of the judgments entered in Castillo and Menendez on July 2, 2018, pursuant to RCFC 60(b). See Cyios Corp. v. United States, 124 Fed. Cl. at 115 (declining to consider plaintiff's new argument on a motion for reconsideration when plaintiff failed to make the argument in its motion for judgment on the administrative record).

Moreover, the Castillo and Menendez plaintiffs do not sufficiently support their argument that the excepting language contained in the plats means that the Castillo and Menendez plaintiffs' properties were "subject to" the Florida East Coast Railway's right-of-way. Instead of citing to Florida State law as support that the exclusionary language in the plats means "subject to" an existing right-of-way, the Castillo and Menendez plaintiffs cite to paragraph five of the declaration of Christopher Smart, a Florida real estate attorney, which was submitted to the court for the first time as an attachment to the Castillo and Menendez plaintiffs' motions for reconsideration. Paragraph five of the Smart declaration states that:

14

> [T]he centerline presumption . . . in Florida means that a conveyance by lot and block number carries with it the interest in any abutting right of way subject to the right of way easement or dedication. When the right-of-way easement or dedication is vacated, then the owner of the lot owns to the centerline of the right-of-way free and clear of any easement or dedication.

The above-quoted paragraph from Mr. Smart's declaration regarding the centerline presumption, however, does not support the Castillo and Menendez plaintiffs' proposition that the excepting language in the plats means that the land conveyed was "subject to" the railroad right-of-way. The above-quoted paragraph from Mr. Smart's declaration does not discuss the meaning of the excepting language in the plats at issue. The Castillo and Menendez plaintiffs agree that "[t]his Court must apply Florida property law in the same manner Florida's Supreme Court would apply Florida law. . . . [A] federal court . . . must defer to the interpretation of the highest state court." Any explanation or interpretation offered by Mr. Smart as to how the centerline presumption should be applied in the above-captioned cases, however, is not binding on this court. It is the role of the court to interpret and apply Florida State law in the above-captioned cases, as interpreted by the Florida courts. See Chi. Coating Co., LLC v. United States, 892 F.3d 1164, 1170 (Fed. Cir. 2018) ("[W]e must apply the law of the state where the property interest arises."); see also Info. Sys. & Networks Corp. v. United States, 136 Fed. Cl. 34, 37 (2018) ("[I]t is the role of the court and not the role of the experts to opine on the law.").

The Castillo and Menendez plaintiffs also cite to other paragraphs of Mr. Smart's declaration and to the declaration of Dale Whitman, a professor of property law, which also was presented to the court for the first time as an attachment to the Castillo and Menendez plaintiffs' motions for reconsideration. Mr. Smart's declaration states that "[t]he provision in the dedicatory language of the Princess Park Manor plat lessing out the right-of-way of the Okeechobee-Miami extension of the Florida East Coast Railway is . . . . an expression that the right-of-way is not part of the plat." Mr. Smart's declaration further states that "[t]he provision in the dedicatory language of the Zena Gardens plat excepting the right-of-way of the Okeechobee-Miami extension of the Florida East Coast Railway is . . . . an expression that the right-of-way is not part of the plat." Similarly, Mr. Whitman's declaration notes that "[t]he language in the Zena Gardens plat 'excepting' the railroad corridor is merely stating that the railroad corridor is not part of the subdivision – which of course, it is not."[6] Even assuming the court would have afforded any weight to these declarations, which plaintiffs submitted to the court after the court issued its June 29, 2018 Opinion, the statements made by Mr. Smart and Mr. Whitman do not change the court's June 29, 2018 conclusion. As the court noted in its June 29, 2018 Opinion:

> Under Florida law, when a party takes title by reference to a "recorded plat," "all restrictions, easements, and reserved rights that appear on the plat are incorporated in the instruments of conveyance as if though the same had

[6] Mr. Whitman's declaration, without explanation, does not reference or discuss the exclusionary language contained in the Princess Park Manor subdivision, the second subdivision plat at issue in the above-captioned cases and relevant to the takings claims for the majority of the plaintiffs in Castillo and Menendez.

been recited in the instruments." Peninsular Point, Inc. v. South Georgia Dairy Co–op, 251 So. 2d at 693; see also McCorquodale v. Keyton, 63 So. 2d 906, 910 (Fla. 1953); Miami-Dade County v. Torbert, 69 So. 3d 970, 973 (Fla. Dist. App. Ct. 2011) ("If a landowner plats or subdivides his land into lots or blocks, lays off streets and other public ways, designates portions of the land [as] parks, playgrounds, and similar facilities and then conveys lots with reference to the plat, he is bound by the plat and representations he has made.").

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 738-39. Because all of the plaintiffs in the above-captioned cases took title to their individual parcels of land by reference to either the Zena Gardens or Princess Park Manor plats, plaintiffs are bound by their respective plat's restrictions and representations as if contained in their respective deeds. See id. As Mr. Smart and Mr. Whitman recognized in their declarations, the plats at issue excluded the railroad corridor. Therefore, the Castillo and Menendez plaintiffs could not have taken title to the land underlying the railroad corridor, which was specifically excluded from the subdivision plats.

The Castillo and Menendez plaintiffs then argue that the court's "premise" "that the centerline presumption is inapplicable or is rebutted whenever the relevant boundary is described or depicted as the edge (and not the center) of the adjoining right-of-way" is "incorrect because it effectively nullifies the centerline presumption and the strip-and-gore doctrine." As an initial matter, although not previously raised by the Castillo and Menendez plaintiffs in their earlier motions for summary judgment and only briefly referenced in their reply briefs in support of their motions for summary judgment prior to the court's June 29, 2018 Opinion, this court nonetheless addressed the "strip-and-gore doctrine" in its June 29, 2018 Opinion and stated, the doctrine:

> "has been explained as follows: 'The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple.'" Rogers v. United States, 184 So. 3d at 1097-98 (quoting Penn Central Corp. v. U.S. R.R. Vest Corp., 955 F.2d 1158, 1160 (7th Cir. 1992)).

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 737 n.11. Underlying the "strips-and-gore doctrine" is the premise that "[t]ransaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased." Rogers v. United States, 184 So. 3d at 1098 (quoting Penn Cent. Corp. v. U.S. R.R. Vest Corp., 955 F.2d at 1160). The parties did not dispute in their cross-motions for summary judgment in the above-captioned cases whether the interest obtained by the Florida East Coast Railway was an easement or fee simple. The parties agreed that the Florida East Coast Railway only obtained an easement in the railroad corridor through four separate condemnation proceedings in Dade County Circuit Court in the 1920s. Thus, even if the Castillo and

Menendez plaintiffs could now raise the "strip-and-gore doctrine," the doctrine does not aid plaintiffs in proving their takings claims.

The court did not conclude in its June 29, 2018 Opinion, as the Castillo and Menendez plaintiffs suggest, that "the centerline is inapplicable or is rebutted whenever the relevant boundary is described or depicted as the edge (and not the center) of the adjoining right-of-way." The court explained in its June 29, 2018 Opinion,

> under Florida law, the center line presumption can be rebutted, for example, by evidence that the grantor did not own the land underlying the easement at issue, or, if there was ownership of such land, evidence that the grantor clearly reserved title to the land, such that the adjoining landowner would have no interest in the easement.

Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 738. This court then concluded that the centerline presumption was rebutted in the above-captioned cases because the original subdivision owners "did not intend to pass title to the railroad corridor to the grantees of the subdivision parcels" because the language in the subdivision plats excepted the strip of land underlying the railroad corridor from the subdivision. See id. at 740, 742. This court noted that none of the Castillo and Menendez plaintiffs' parcels extended onto the railroad corridor as support for its conclusion that the subdivision plats did not include the railroad corridor. See id. at 740, 741. Thus, the court did not conclude that the centerline presumption is rebutted simply because a subdivision plat displays a party's property as extended to the edge of the disputed right-of-way.

The Castillo plaintiffs also argue that the court "clearly erred when it granted summary judgment" in favor of defendant regarding the portion of the railroad corridor obtained by condemnation because the government did not move for summary judgment as to this portion of the railroad corridor.[7] In Castillo, defendant moved for summary judgment as to the portion of the railroad corridor obtained through the Holman deed and not to the portion of the railroad corridor obtained through four separate condemnation proceedings in 1924.[8] See id. at 721. As a judge of this court explained:

> [A] court may . . . grant summary judgment in favor of the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("[Under Fed. R. Civ. P. 56], district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that [it] had to come forward with all of its evidence"); Massey v. Del

---

[7] In Menendez, defendant moved for summary judgment as to the portions of the railroad corridor obtained by condemnation. The Menendez plaintiffs do not raise this argument in their motion for reconsideration of the court's June 29, 2018 Opinion and of the July 2, 2018 judgment entered in Menendez.

[8] In Castillo, the court granted summary judgment in favor of defendant as to the Holman deed. Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 734. The Castillo plaintiffs do not seek reconsideration regarding the Holman deed.

17

Labs., Inc., 118 F.3d 1568, 1572 (Fed. Cir. 1997) ("In many cases, where the factual record has been well developed before the summary judgment stage, the grant of summary judgment to the non-movant may well be the most efficient manner to decide a case."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2008). Whenever a court believes that the nonmoving party is entitled to judgment, the court must first ensure that the original movant has had an adequate opportunity to show that there is a genuine issue and that the opponent is not entitled to judgment as a matter of law. 10A Federal Practice and Procedure § 2720. A court will view all inferences drawn from the underlying facts in a light most favorable to the party against whom summary judgment is to be entered. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

U.S. Sur. Co. v. United States, 83 Fed. Cl. 306, 309–10 (2008); see also D Three Enters., LLC v. SunModo Corp., 890 F.3d 1042, 1048 (Fed. Cir. 2018) ("So long as the losing party was on notice that it had to come forward with all of its evidence, a sua sponte grant of summary judgment may be appropriate." (interpreting Fed. R. Civ. P. 56(f) (2018)));[9] Parking v. United States, 72 Fed. Cl. 151, 157 (2006) (granting summary judgment sua sponte in favor of plaintiff).

The Castillo plaintiffs moved the court for summary judgment as to the portion of the railroad corridor obtained by condemnation, and argued that there was no genuine issue of material fact on this issue. Defendant responded to plaintiffs' motion for summary judgment, and argued that the subdivision plats for the subdivisions in which plaintiffs' parcels were located, and which defendant submitted with its response brief, rebutted the centerline presumption. Defendant also argued that

> [t]he plain language of the plat stated that the subdivision developers owned specific land that did not include the railroad corridor. Therefore, if the subdivision developer as the predecessor-in-interest to Plaintiffs did not own any portion of the railroad corridor as presented by their plats, then Plaintiffs cannot be the current owner of this land, especially since all of the Plaintiffs' deeds refer back to these recorded plats.

---

[9] As this court noted in its June 29, 2018 Opinion, "Rule 56 of the United States Court of Federal Claims Rules (RCFC) is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect." Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 722. Because RCFC 56 is similar to Fed. R. Civ. P. 56, this court may rely on cases interpreting Fed. R. Civ. P. 56. See Progressive Indus., Inc. v. United States, 888 F.3d 1248, 1253 (Fed. Cir. 2018) ("As we have stated before, '[t]he precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims.'" (quoting Kraft, Inc. v. United States, 85 F.3d 602, 605 n.6 (Fed. Cir.), opinion modified on other grounds on denial of reh'g, 96 F.3d 1428 (Fed. Cir. 1996))).

18

The Castillo plaintiffs argued in their reply brief to their motion for summary judgment that the subdivision plats did not overcome the presumption that the plaintiffs owned to the center of the land underlying the railroad corridor obtained by condemnation. The court, however, disagreed with the Castillo plaintiffs, finding that the subdivision plats not only rebutted the centerline presumption, but also established that the plaintiffs could not own the land underlying the railroad corridor. See Castillo et al.; Menendez et al. v. United States, 138 Fed. Cl. at 740, 742. Even though defendant did not move for summary judgment as to the portion of the railroad corridor obtained through condemnation, the Castillo plaintiffs had adequate notice and opportunity to argue to the court as to why the subdivision plats did not preclude their takings claims. The court's June 29, 2018 Opinion granting summary judgment in favor of defendant regarding the portion of the railroad corridor obtained through condemnation was not in error so as to require the court to reconsider its June 29, 2018 Opinion, pursuant to RCFC 59(a), or the judgment entered on July 2, 2018 in Castillo, pursuant to RCFC 60(b). See U.S. Sur. Co. v. United States, 83 Fed. Cl. at 310 (awarding summary judgment sua sponte to defendant when plaintiff was aware that there was only one legal issue pending before the court and when plaintiff argued the very point in its motion for summary judgment).

The Castillo and Menendez plaintiffs finally argue in their motions for reconsideration that "to the extent this Court believes 'there is a substantial ground for difference of opinion,'" on whether the "owners of these plats held title to the centerline of the land encumbered by the right-of-way easement," this court should "consider issuing an interlocutory order to the Federal Circuit with a request that the Federal Circuit certify this question to the Florida Supreme Court. This would provide the most judicially-efficient manner to obtain a final resolution to this question of Florida state law." Pursuant to Florida State law, it appears correct that this court cannot certify a question of law to the Supreme Court of Florida. See Fla. R. App. P. 9.150(a) (2018). Florida State law indicates that only "the Supreme Court of the United States or a United States court of appeals may certify one or more questions of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida." Id. The Castillo and Menendez plaintiffs' request for an interlocutory Order will not be granted. The Castillo and Menendez cases are closed, with judgment having been entered in both cases on July 2, 2018. The Castillo and Menendez plaintiffs have not presented this court with any grounds for re-opening those judgments in the above-captioned cases.

## CONCLUSION

In sum, the <u>Castillo</u> and <u>Menendez</u> plaintiffs have not presented this court with any proper grounds to reconsider its June 29, 2018 Opinion or the July 2, 2018 judgments entered in <u>Castillo</u> and <u>Menendez</u>. Therefore, the <u>Castillo</u> plaintiffs' motion for reconsideration pursuant to RCFC 59(a) and RCFC 60(b) is **DENIED**, and the <u>Menendez</u> plaintiffs' motion for reconsideration pursuant to RCFC 59(a) and RCFC 60(b) also is **DENIED**.

**IT IS SO ORDERED**.

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**